ORRICK, *Appellant*, v. DURHAM.

1. **Waiver of Vendor's Lien.** Acceptance of a mortgage as security for a portion of unpaid purchase money waives the vendor's lien for the remainder.

2. **Recitals in Recorded Deed.** The purchaser of a note secured by mortgage takes it subject to all the equities fastened upon it by stipulations or recitals contained in any recorded deed which forms a link in his chain of title.

3. **Subrogation: MORTGAGE.** If a party purchasing land subject to a mortgage, contracts with the mortgageor to pay the mortgage debt, and afterward the mortgageor is compelled to pay it himself, he will be subrogated to the rights of the mortgagee as against such purchaser and any one claiming under him with notice.

4. **Res Judicata: MORTGAGE.** The maker of a note secured by mortgage was sued upon the note, suffered judgment and paid the judgment. He then brought this suit against the plaintiff in the judg-

ment, who held another mortgage upon the same land, for the purpose of having himself subrogated to the rights of the original holder of the paid note and having the mortgage which had secured it enforced as a first lien on the land. *Held*, that the judgment in the first action was no bar to this.

*Appeal from Moberly Court of Common Pleas.*—HON. G. H. BURCKHARTT, Judge.

REVERSED.

*Reed & Hall* for appellant.

*W. T. McCanne* for respondents.

PHILIPS, C.—In February, 1872, the appellant, Orrick, purchased of D. P. Shaw a tract of land in Randolph county, receiving therefor a warranty deed, duly recorded in said county. As a part of the purchase money Orrick executed to Shaw two promissory notes, each for $333.33, of same date as deed, due in one and two years, respectively; and to secure the same executed a deed of trust to H. M. Porter, trustee, on same land. In June following, Orrick sold and conveyed this land to one J. B. Porter for the consideration of $2,675. As a part payment of this purchase money, J. B. Porter agreed with Orrick, in writing, to assume the payment of the said two notes for $333,33, each, of Orrick to Shaw, and this fact was recited in Orrick's deed to J. B. Porter, which was duly recorded July 9th, 1872. Porter then executed his note to Orrick for $1,-098.89, at twelve months, for the balance of unpaid purchase money, and a deed of trust on said land to secure the same. Afterward Orrick, who lived in St. Louis, sent said note to a friend in Moberly to negotiate for him. who sold same to M. P. Durham, Orrick indorsing it.

At the maturity of this note Durham did not notify Orrick of Porter's failure to pay—Porter then being solvent. On the 13th day of July, 1873, Porter paid to Durham $488.50 thereon. In February, 1873, Porter also paid to

Shaw one of the $333.33 notes—first falling due. On the maturity of the other note of $333.33, Shaw made demand of payment on Orrick, who called attention to the fact that Porter was to pay, and requested him to foreclose the deed of trust given therefor. In July, 1874, Shaw assigned this note to one Coates, whom Orrick also notified and requested as he had Shaw, whereupon in October, 1874, Coates caused said land to be advertised for sale under said deed of trust given to secure the debt. On the day fixed for this sale, and prior to any sale, Durham, to prevent the sale, paid to Coates the amount of said note, and took an assignment thereof to himself. Porter was then insolvent.

After Durham obtained this $333.33 note he sued Orrick thereon in the circuit court of St. Charles county, and recovered judgment, which judgment Orrick paid off. It appears that after this, Durham, through the sheriff of Randolph county acting as trustee, was about proceeding to sell said land under the deed of trust given by Porter to Orrick to secure the payment of the $1,098.89 note. Whereupon Orrick instituted this action in equity against Durham and the said sheriff; the object and nature of which action is to subrogate Orrick to the rights of Shaw, and the assignees of the $333.33 note, to the deed of trust given by Orrick to said Shaw to secure the payment of said note, and to postpone the payment of the $1,098.89 note to this prior lien of Orrick's as claimed by him, or to subject this land to its payment, as a prior lien to that of the $1,098.89 note, and for all proper relief. Notwithstanding the institution of this suit Durham proceeded with the sale on the following day, and bought in the land, and now claims it as free from any prior lien. The common pleas court found for defendant and dismissed the bill. Plaintiff brings the cause here on appeal. Durham has since died and the cause has been continued against his administrator.

As between Orrick and Porter the relation of vendor and vendee existed; and Orrick, as between himself and

**1. WAIVER OF VENDOR'S LIEN.** Porter, unless he had by some act lost or waived it, was entitled to a vendor's lien on the land, for any part of the unpaid purchase money. After paying so much cash and giving note secured by deed of trust for $1,098.89, there remained unpaid of the purchase money a sum equal to the amount of the two notes of $333.33, each, owing by Orrick to Shaw. The payment of those two notes Porter assumed as a part of the consideration money of the land. Appellant contends that as between himself and Porter, there existed a vendor's lien on the land for this unpaid purchase money. A vendor's lien is only one of implication. True, it exists in all cases, as between vendor and vendee, unless there is a manifest intention that it shall not exist. *Mackreth v. Symmons*, 15 Ves. 329. It may be waived, and this waiver is often one of intention. Where it can be gathered from all the facts and circumstances surrounding the sale that the vendor did not intend to retain his lien, this will as effectually destroy it as if he had taken an independent collateral security. The fact that Orrick took an express mortgage for a portion of the purchase money would indicate, on the maxim *expressum facit cessare tacitum*, a waiver of the lien as to the residue of the purchase money.

The authorities in support of this view are numerous and most respectable. Chief Justice Marshall in *Brown v. Gilman*, 4 Wheat. 290, 291, says: "The express contract that the lien shall be retained to a specified extent, is equivalent to a waiver of that lien to any greater extent." To same effect are the following authorities: *Fish v. Howland*, 1 Paige 30, 31; *Phillips v. Sanderson*, 1 Sm. & M. Ch. 462; *Bond v. Kent*, 2 Vernon 281. Taking a mortgage on the land sold for the purchase money, waives the implied lien. This is the settled law of this State. *Emison v. Whittlesy*, 55 Mo. 254; *Sharp v. Collins*, 74 Mo. 266; *Briscoe v. Callahan*, 77 Mo. 134. In Orrick's deed to Porter it is, in effect, stated that a part of the consideration, $684.45, Porter is to pay to Shaw in liquidation of the unpaid purchase money

12—79

for the land in question. This deed refers to Orrick's deed of trust to Shaw, in which it is recited that it is " given to secure the balance of purchase money" for this land. According, therefore, to the rule above stated, by implication. the vendor's lien proper, as to the balance of the purchase money, was waived.

But this case, on appellant's behalf, does not depend on the existence of the vendor's lien. It rests upon another 2. RECITALS IN RE-      foundation stone of equity jurisprudence, CORDED DEED.      firmer than an implied vendor's lien, as we will develop. It is important to keep in mind that both the deed of trust from Orrick to Shaw, and the deed from Orrick to Porter, the one containing the reservation of the lien, and the other the fact of the assumption of the unpaid purchase money by Porter, were duly recorded in the proper county long prior to the assignment of the notes in question to Durham. Whatever interest or lien he acquired in and upon the land he took with constructive notice of the recitals in said deeds. A purchaser is bound to take notice of all liens shown to exist by his vendor's title deeds. *Mc-Rimmon v. Martin*, 14 Texas 318; *Tiernan v. Thurman*, 14 B. Mon. (Ky.) 277; *Major v. Bukley*, 51 Mo. 227. As is said by Atwater, J., in *Daughaday v. Paine*, 6 Minn. 452, " It is contrary to reason and good sense that a party should be excused from knowing the contents and the whole contents of his title deeds. The purchaser has possession of these title deeds, (through the records,) to all intents and purposes as fully as if they were delivered into his own hands." In *Johnston v. Gwathmey*, 4 Litt. (Ky.) 321, it is held that " the effect is the same if the deeds are not recorded at all, if the party to be affected by notice claims under and cannot make out title without them."

So that it must follow that if the recitations made in the deed of Orrick to Porter had the effect to limit the estate conveyed in the hands of Porter so that he could not have held the estate free from the duty and obligation imposed to discharge Orrick's debt to Shaw, then Durham

stands in no better position in respect thereto than Porter. He took the deeds of trust for the $1,098.89 note, *cum onere*, as to the security. It is held in *Linville v. Savage*, 58 Mo. 248, that it makes no difference whether he bought his note before or after maturity. It is not a question of innocent purchaser of commercial paper, but "as to the priorities of securities." Affirmed in *Logan v. Smith*, 62 Mo. 455. To same effect is *Butler v. Slocomb*, 33 La. An. 170; *s. c.*, 13 Reporter 74. Durham, therefore, took the Porter deed of trust subject to the Orrick deed of trust to Shaw, and the assumption of its payment by Porter in his purchase from Orrick. He knew by the record that Porter had assumed the payment of the Orrick deed of trust when he bought the $333.33 note, and that Porter took his title to the land burdened with the deed of trust given by Orrick to Shaw, and that between Orrick and Porter the former was entitled to make the land discharge that debt.

Leaving then for the moment Durham out of view, had Orrick, who was primarily personally bound to Shaw **3. SUBROGATION: mortgage.** for the $333.33 debt, paid the same off, either voluntarily or under compulsion, would he not, upon clear principles of equity, have been entitled to be subrogated to the rights of the mortgagee, Shaw? Does it make any difference, as suggested by respondents' counsel, that Orrick paid his own debt to Shaw? There is neither anomaly nor solecism in a mortgageor under certain circumstances, who pays his own mortgage debt, becoming subrogated to the rights of the mortgagee as against a subsequent incumbrance or purchase. In *Halsey v. Reed*, 9 Paige 446, 453, it was held in a case involving the principle under consideration, that if the mortgageor " had paid the amount of the bond and mortgage voluntarily to the present holders thereof, he would have had a right to demand an assignment of the same, to enable him to enforce payment out of the premises." In *Stillman v. Stillman*, 21 N. J. Eq. 127, 129, it is expressly held that one may purchase his own mortgage on land that he has

sold, and although such purchase may render the bond un-availing, yet where lands are conveyed, as these were sub-ject to the mortgage as part of the consideration, the mort-gage is the principal security, and even if the mortgageor pays the bond, he is entitled to be subrogated as to the mortgagee, and to be re-paid out of the land what he has paid on his own bond. *Kamena v. Huelbig*, 23 N. J. Eq. 78, is a clear enunciation of the same equitable principle. In short, this is now a well recognized feature of equity jurisprudence. Sheldon on Subrogation, §§ 24, 26; *Moore's Appeal*, 88 Pa. St. 450; 51 N. Y. 333.

Another view of this question is pertinent. If a party owning land incumbered by mortgage for his debt, sells it to another, who, as a part of the purchase money, agrees to pay this mortgage debt, as between themselves the vendor becomes the security of the vendee for the mortgage debt. Brandt on Sur. and Guar., § 24. And in such case he is entitled, on payment of the debt, to be subrogated to the rights of the mortgagee, and may to that end compel the assignment of the mortgage to him. This rests upon the principle that in equity the land becomes the primary fund for the payment of the debt. *Johnson v. Zink*, 51 N. Y. 333; 1 Story Eq., § 499.

It must, therefore, result that as Durham held the $1,098.89 deed of trust, as an assignee with notice, he occupies as to the security no vantage ground over that of his vendor; and as to the $333.33 note, he sustained the same relation to it and the mortgage given to secure it that Shaw did. So when Orrick, as surety for Porter, paid this last note to Durham, he was entitled to be subrogated to the rights of the mortgagee, and to have that debt paid to him as a prior lien on the land in question.

Respondent, as if comprehending the issue coming out of the equitable principles herein announced, sought on the trial to evade the constructive notice imparted to him by the record of the deeds, by claiming that Clarkson, through whom he bought the $1,098.89 note of Orrick,

represented to him that it was secured by the first mortgage lien on the land. This branch of his defense rests alone on his unsupported evidence. He is by a great preponderance contradicted by other witnesses, and the surrounding circumstances of the transaction. On such a state of testimony no chancellor would be justified in finding this issue for him; and I am satisfied the discerning judge who tried the cause placed his finding on no such ground. His proof fell far short of the requirement of Judge Story. Sec. 403, Story Eq.

Respondent also claims that the proceedings had in the St. Charles circuit court, wherein he recovered judgment 4. RES JUDICATA: against appellant on the note of $333.33, mortgage. is a bar to this action. It would be sufficient to say that Orrick had no cause of action or ground of relief until he paid off this note. *Halsey v. Reed, supra.* Durham's action was *in personam.* Orrick's is in *rem;* and of course he had no set-off and no cause of action until he paid Porter's debt. *Brake v. King,* 54 Ind. 294, 297. An examination of the record in the former suit shows, persuasively, that Durham resisted Orrick's defense there interposed on the very grounds above suggested, on which he was successful. If there be any estoppel it is rather against the plea now made by the respondent.

It is not essential to the determination of this appeal, but it serves to illustrate the unfairness and injustice of respondent's resistance to this action, when it is observable from the record that the land is amply sufficient to satisfy both debts. His conduct was not such as equity will excuse or tolerate.

The judgment of the common pleas court was, in my opinion, for the wrong party, and should be reversed and remanded with special directions to the judge to proceed to enter up judgment on the proofs, subrogating Orrick as mortgagee in the Shaw mortgage, and enforcing the same against the land in question. All concur.