THE STATE ex rel. LUKE BROWN et al., Appellants, v. THE BOARD OF EDUCATION OF THE CITY OF ST. LOUIS.

In Banc, May 22, 1922.

1. **BOARD OF EDUCATION: Employment of Teachers: Rules: Statutory Construction: Business.** The making and enforcing of rules in regard to the employment and dismissal of teachers by the Board of Education of St. Louis, is "business" within the meaning of that word as used in Section 11472, Revised Statutes 1919, giving the circuit court of such city "jurisdiction over the members of such board and its officers to require them to account for their official conduct in the management and disposition of the funds, property and business committed to their charge;" and such jurisdiction may be exercised upon the petition of ten citizens and householders of such city, as provided in said section.

2. ———: ———: ———: **Dismissal of Teachers.** The rule of the Board of Education of St. Louis to the effect that the teachers appointed at the close of the scholastic year shall hold their positions for one year; and the board distinctly reserves the right of discontinuing the services of any and all of the teachers

at any time, should it deem such an action expedient; and that any teacher appointed to a position shall hold position for that scholastic year, subject, however, to the above mentioned provisions governing teachers re-appointed at the close of the scholastic year; and that every teacher employed by the board shall be required to sign a contract accepting employment subject to the conditions of this rule, is void as being in conflict with Section 11461, Revised Statutes 1919, defining the powers and duties of the Superintendent of Instruction of the schools of such city.

3. ———: ———: ———: ———: Certiorari. Since no appeal or writ of error lies to review the action of the Board of Education when in excess of its jurisdiction, *certiorari* is the appropriate remedy to effectuate the purpose of the statute.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene,* Judge.

REVERSED AND REMANDED.

*S. H. West* and *Anderson, Gilbert, Wolfort & Ely* for appellant.

(1) The court erred in holding relators could not bring this suit. Sec. 11472, R. S. 1919. (2) *Certiorari* is the proper remedy to restrain public boards when they act in excess of their jurisdiction. State ex rel. v. Morehead, 256 Mo. 692; State ex rel. v. Bright, 224 Mo. 235; State ex rel. v. Wills, 210 Mo. 621; State ex rel. v. Slover, 113 Mo. 210; State ex rel. v. Knott, 207 Mo. 167; State ex rel. v. Johnson, 138 Mo. App. 813; School District v. Pace, 113 Mo. App. 143. (3) The school board has no power to terminate a teacher's contract. This power is vested in the Superintendent of Instruction, and no rule to the contrary is authorized, and employment is on a basis of merit, and teachers can only be discharged for cause. Sec. 11461, R. S. 1919; Ch. XVI, R. S. 1919; King v. School Board, 71 Mo. 628; Arnold

v. School District, 78 Mo. 232; Oakes v. School District, 98 Mo. App. 163; Frazier v. School District, 24 Mo. App. 254. (4) Teachers in the St. Louis public schools are appointed in the first instance by the Superintendent of Instruction on a basis of merit, after examination by said superintendent, and their employment, when passed upon by the board, thereafter continues until removed in the manner prescribed by the statute; that is, when the board passes upon, with approval, the suspension for cause by the superintendent. A rule of the board to the contrary is illegal and unauthorized. Sec. 11461, R. S. 1919; Chapter XVI, R. S. 1919; State ex rel. v. Walbridge, 153 Mo. 200. (5) Every word in the statute must be given a meaning unless to do so would nullify the rest of the statute. State ex rel. v. Gordon, 266 Mo. 411; State ex rel. v. Roach, 258 Mo. 553; State ex rel. v. Harter, 188 Mo. 530; Hegberg v. Railroad, 164 Mo. App. 557. The construction claimed by the respondent will render the word ''business'' useless. Outside of dealing with the funds and property, the only function our school board has is to deal with the teaching branch. If the Legislature intended to limit this statute merely to account for the funds and property, it would not have added the word ''business.'' ''Funds'' and ''property'' exhaust with the genus of funds and property, and there is nothing left of funds or property not comprehended in the terms funds and property, Therefore there can be no basis to invoke *ejusdem generis.* Making contracts with teachers is certainly doing business, and is not ''funds or property.''


*Robert Burkham* for respondent.


(1) Sec. 11472, R. S. 1919, does not give the right to ''ten citizens and householders'' of St. Louis to compel the Circuit Court of the City of St. Louis to review

the action of the Board of Education in passing or enforcing rules relating solely to the terms upon which teachers shall be employed. This extraordinary proceeding is limited to inquiries involving the management of the public funds, property, and business committed to the care of the Board of Education, to improper losses of public moneys, to abuses of trust, to removal of members for gross misconduct or disqualification for office and to prevent illegal alienation of property of the public schools. (2) In no event is *certiorari* the proper remedy, for: (a) The action of respondent in determining the terms on which it will employ teachers is a ministerial action. It in no way partakes of a judicial character. The writ of *certiorari* may only issue to review action which is of a judicial nature. 11 C. J. 121; State ex rel. v. Harrison, 141 Mo. 12. (b) The action of public officers can only be reviewed by *certiorari* brought at the relation of the Attorney-General or by some person whose rights have been affected by the action complained of. State ex rel. v. Harrison, 141 Mo. 12. (3) There is nothing in the law forbidding the board from employing teachers by annual contract. The fact that under the law "all appointments shall be made upon a basis of merit" does not create a life tenure, nor does it by implication or otherwise divest the board of its power to establish by appropriate rule the length of the term for which teachers shall hold their positions. (4) The provision authorizing the Superintendent of Instruction, who is an officer of the board, "to suspend any teacher for cause deemed by him sufficient" (Sec. 11461, R. S. 1919) can only relate to questions of discipline or active misconduct on the part of the teacher. It does not exclude the power of the board to provide for the termination of the relationship, particularly when, in its judgment, the public interest requires the reduction of the number of teachers or rearrangement of courses making it unnecessary to continue the employment of teachers of certain subjects.

HIGBEE, J.—The relators filed a petition in the Circuit Court of the City of St. Louis, praying a writ of *certiorari* commanding the Board of Education of said city and the Superintendent of Instruction to certify to said court the record of a certain rule of the Board of Education, and that said rule be quashed. The writ was issued, and on motion of the defendants it was quashed. The relators took a voluntary nonsuit with leave. The case is here on appeal.

The petition avers, in substance, that the ten relators are citizens and householders of the city of St. Louis; that the defendant John J. Maddox is the Superintendent of Instruction, duly appointed by the Board of Education, and that the other individual defendants are the members of the board; that the Board of Education, in violation of the statute, has been for sometime and still is enforcing section 1 of Rule 47 adopted by said board, which is as follows:

"Section 1. The teachers appointed at the close of the scholastic year shall hold their positions for one year; and the board distinctly reserves the right of discontinuing the services of any and all of the teachers at any time, should it deem such an action expedient. Any teacher appointed to a position shall hold position for that scholastic year, subject, however, to the above-mentioned provisions governing teachers reappointed at the close of the scholastic year. Every teacher employed by the board shall be required to sign a contract accepting appointment subject to the conditions of this rule."

The petition further avers that said board is now attempting to enforce said rule and requires all the teachers of the public schools of said city to sign contracts to accept their positions subject to the condition of said rule as set forth therein, and unless restrained by the action of the court and unless said rule is quashed, said board will continue to violate the law as aforesaid and to enforce said rule. Wherefore relators pray, etc.

The defendants moved to quash the writ, because (1) the relators have no interest; (2) the rule con-

cerns only the teachers in said schools and the defendants; (3) the action of the defendants can only be reviewed by *certiorari* at the relation of the Attorney-General or by some person whose rights are affected; (4) the special procedure provided by Section 11472, Revised Statutes 1919, relates only to inquiries involving the management of the public funds, property and business committed to the care of the Board of Education, to improper losses of public money, abuses of trust, removal of members for gross misconduct or disqualification for office, etc., and said procedure is not available to review the action of the board in adopting rules specifying the terms on which teachers shall be employed; (5) any person injured by the action of the board has an adequate remedy at law; (6) the action of defendants in determining the terms on which it will employ teachers is a ministerial action, not reviewable on *certiorari;* (7) the writ was improvidently issued; (8) said rule is lawful and valid.

The motion was sustained on the ground that the relators have not been given authority by the act in question to complain about the acts set forth in their complaint.

Every city of 500,000 or more inhabitants in this State constitutes a single school district, the supervision and government whereof is vested in a board of twelve members, to be called and known as the board of education of ——, a superintendent of instruction and a commissioner of school buildings. [Sec. 11456, R. S. 1919.] Such board of education shall have general and supervising control, government and management of the public schools and public school property in such city; to make, amend and repeal rules and by-laws for its meetings and proceedings for the government, regulation and management of the public schools and school property in such city, for the transaction of its business and the examination, qualification and employment of teachers, which rules and by-laws shall be binding on such board of education and all parties dealing with it until formally repealed; to levy such taxes as are or may be authori-

zed by law for school purposes, and to purchase and hold property.' [Sec. 11457, R. S. 1919.]   While the act in question, Sections 11456 to 11479, is general in its terms, it relates solely to the city of St. Louis.

Section 11461, Revised Statutes 1919, so far as pertinent, reads:

"The superintendent of instruction shall have general supervision, subject to the control of the board, of the course of instruction, discipline and conduct of the schools, text-books and studies; and all appointments, promotions and transfer of teachers, and introductions and changes of text-books and apparatus shall be made only upon the recommendation of the superintendent and the approval of the board. The superintendent shall have power to suspend any teacher for cause deemed by him sufficient, and the board of education shall take such action upon the restoration or removal of such teacher as it may deem proper.   All appointments and promotions of teachers shall be made on the basis of merit, to be ascertained, as far as practicable, in case of appointments by examination, and, in cases of promotion, by length and character of service,   Examination for appointment shall be conducted by the superintendent, under regulations to be made by the board."

Section 11472, Revised Statutes 1919, reads in part:

"The circuit court of such city shall have jurisdiction over the members of such board of education and its officers to require them to account for their official conduct in the management and disposition of the funds, property and business committed to their charge;  to order, decree and compel payment by them to the public school fund of all sums of money, and of the value of all property which may have been improperly retained by them, or transferred to others, or which may have been lost or wasted by any violation of their duties or abuse of their powers as such members or officers of such board; to remove any such member or officer upon proof or conviction of gross misconduct or disqualification for office;  to restrain and prevent any alienation of property of the public schools by said members or officers,

in cases where it may be threatened or there is good reason to apprehend that it is intended to be made in fraud of the rights and interests of the public schools. The jurisdiction conferred by this article shall be exercised, as in ordinary cases, upon petition, filed by or at the instance of any member or officer of such board, or at the instance of any ten citizens and householders of such city, who shall join in such petition, verified by the affidavit of at least one of one them.''

Under Section 11472, relators, ten citizens and householders, by this proceeding, seek to have the rule in question quashed as being repugnant to the provisions of Section 11461.

I. Webster defines ''business'' as that which busies or engages time, attention or labor as a principal, serious concern or interest. The lexicographer gives this illustration of the use of the word: ''Wist ye not that I must be about my Father's business?'' The Meaning of Word Business. court has jurisdiction to require the members of the board and its officers to account for their official conduct in the management and disposition of the funds, property and business committed to their charge.

Respondents contend that the word ''business'' as used in this connection does not authorize the court to take cognizance of the rule in question relating to the appointment and discharge of teachers; that the word here used in connection with the words ''funds'' and ''property'' does not embrace all the activities in which the board may engage, but is limited to fiscal affairs and the management of its property. This view eliminates the word ''business'' from the statute and renders it superfluous and meaningless.

If the design of the section was to limit the power of the court to require the board to account simply for the management and disposition of the public school funds and property, that purpose would have been fully expressed by the use of the words ''funds and property.'' To say that the word ''business'' as used in this section

must be taken in connection with the words ''funds and property'' is a forced, strained and unnatural construction. It would emasculate the section. The board is not engaged in business with the funds or property of the public schools; it is not engaged in trading or merchandising.

We think an examination of the statute relative to the powers and duties of the board will show that neither the words ''property,'' ''funds'' nor ''business'' derives any color from its association with the other, but each stands as the representative of a distinct class, and that the meaning of the word ''business'' is not ''restricted or affected by the preceding particular words which signify subjects greatly different from one another.'' [State v. Eckhart, 232 Mo. 49, 53.]

On page 53 of the above case BURGESS, J., said:

''Endlich on the Interpretation of Statutes, Section 409, says: 'Further, the general principle in question applies only where the specific words are all of the same nature. Where they are of different *genera,* the meaning of the general word remains unaffected by its connection with them. Thus, where an act made it penal to convey to a prisoner, in order to facilitate his escape, ''any mask, dress, or disguise, or any letter, or any other article or thing,'' it was held that the last general terms were to be understood in their primary and wide meaning, and as including any article or thing whatsoever which could in any manner facilitate the escape of a prisoner, such as a crowbar. [Reg. v. Payne, L. R. 1 C. C. 27.]'

''The great fundamental rule in the construction of statutes is to ascertain and give effect to the intention of the Legislature. For the purpose of discovering the legislative intent it is proper, and often necessary, to consider the history of the statute, the reason for its enactment, and the prior state of the law on the subject to which the statute relates.''

The statute is remedial, as admitted by respondents. It should be construed so as to meet the cases which are clearly within the spirit or reason of the law, or within

the evil which it was designed to remedy, provided such interpretation is not inconsistent with the language used, resolving all reasonable doubts in favor of the applicability of the statute to the particular case. 12 C. J. 1302.] It is also a cardinal rule that when the language is plain, there can be no construction because there is nothing to construe. [Ib.]

What is the business committed to the care of the Board of Education? It is clear from Section 11457 that it is charged with the supervising control, government and management of the public schools and public school property. These are the affairs "committed to their charge," and the court has power to require the board to account for its official conduct in the management and disposition of all of the business and affairs committed to its charge; not simply of the funds and property which are, comparatively, of minor importance. This construction gives effect to the intention of the Legislature.

II. The statute contemplates that the Superintendent of Instruction shall be an educator, an organizer, and the directing head of the public schools of a great city. It recognizes that he is in touch with the teachers, knows their merits and capabilities; **Rules of Board: Employment of Teachers.** that he alone is in a position to recommend intelligently their appointment, promotion, transfer or dismissal, and to organize a permanent corps of capable and efficient teachers. Relatively speaking, the members of the board have little or no opportunity for forming a judgment on such matters. Under the rule, which, it is said, has been in force since the year 1875, the superintendent is ignored in the appointment, promotion, transfer or dismissal of the teachers. The teacher's tenure is uncertain and insecure. The whole corps of teachers, 2688 in number, is discharged at the end of the scholastic year. They are discharged and employed by the board without the recommendation of the Superintendent of Instruction, in disregard of the statute. They are required to sign contracts subjecting themselves to summary dis-

missal at any time at the pleasure of the board. Under this rule, for obvious reasons, the public schools of St. Louis can have no permanent corps of capable, efficient teachers, appointed on the basis of merit.

The statute under consideration was enacted in 1897. Section 11461 was obviously enacted to abrogate this rule and to remedy the evils arising from its enforcement. This purpose is as apparent as if it had been so declared in express terms. It ordains that the Superintendent of Instruction shall have general supervision, subject to the control of the board, of the course of instruction, discipline and conduct of the schools, text-books and studies; and all appointments, transfers and promotions of teachers and introduction and changes of text-books and apparatus, shall be made only upon the recommendation of the superintendent and the approval of the board. The superintendent shall have power to suspend any teacher for cause deemed by him sufficient, and the Board of Education shall take such action upon the restoration or removal of such teacher as it may deem proper. All appointments and promotions of teachers shall be made upon the basis of merit, to be ascertained, as far as practicable, in cases of appointments, by examination, and in cases of promotion, by length and character of service. These and other provisions of this section are the dominant characteristics of the statute. They unmistakably indicate that the chief business of the board, under the direction and leadership of the Superintendent of Instruction, is the organization of a permanent corps of teachers on the basis of merit, whose tenures are not dependent on the pleasure of the board. The members of the board are shorn of all power of appointment or dismissal except upon the recommendation of the superintendent. The levying of taxes for the support of the schools, the disposition thereof, the purchase and care of the public school properties, are merely incidental and subservient to the conduct and management of the schools.

It is said that in times past gross scandals arose in the management of the fiscal affairs of the public schools

of the city, and that Section 11472 was enacted to correct those evils. We cannot, however agree with counsel that this section was enacted solely to ''protect public property and money from graft, from waste and from active maladministration, and to remove from. office board members who may be guilty of corrupt practices,'' as asserted in respondents' printed argument. For the greater part of such evils, members would be amenable to the criminal laws of the State. Great stress also is laid on the word ''account;'' that one cannot render an accounting as respects the adoption or enforcement of a rule, and this in the face of the statute which empowers the court to require the members of the board to account for their official conduct.

Accounting.

The statute does not limit the jurisdiction of the court over the members of the board to require them to account simply for the funds and property in their hands. Why limit it by judicial construction to fiscal affairs and matters of property? The statute does not stop there. It extends the jurisdiction of the court to the supervision of their official conduct in the management of the business committed to their charge. Are not the members of the board guilty of maladministration when they set at naught the most important provisions of the statute, and usurp the functions of the Superintendent of Instruction as the directing head in the administration and conduct of the public schools? Suppose, for illustration, the board should adopt a rule requiring religious education and training from the viewpoint of the Jew, the Roman Catholic, or the protestant, or for the co-education of white and colored children. Would counsel contend that the court could take no cognizance of rules so revolutionary? Would not the adoption of such rules constitute official misconduct, maladministration in the management of the business committed to their charge? If the board, in the management of the schools, may, with impunity, violate the law in one respect, why not in others?

Jurisdiction of Courts.

Our conclusion is that the enforcement of the rule in question is official misconduct in the management and

conduct of the public schools, and that the court has jurisdiction in the premises. The learned trial court disposed of the case solely on the proposition that the relators have no right to maintain the action. The statute **Remedy.** gives the relators a *locus standi,* but for which they could not maintain this action. It expressly provides that the jurisdiction conferred may be exercised, as in ordinary cases, upon petition at the instance of any ten citizens and houesholders of the city.

As no appeal or writ of error lies to review the action of the Board of Education when in excess of its jurisdiction, *certiorari* is the appropriate remedy to **Certiorari.** effectuate the purpose of the statute. [State ex rel. v. Moreland, 256 Mo. 683, 692; State ex rel. v. Knott, 207 Mo. 167; State ex rel. v. Johnson, 138 Mo. App. 306, 313-314; 11 C. J. p. 134, par. 96.]

The judgment is reversed and the cause remanded.

All concur, except *Elder, J.,* not sitting, and *David E. Blair, J.,* who dissents.