STATE of Missouri, ex rel. Lawrence W. LeFEVRE, et al., Relators,

v.

Honorable James S. STUBBS, Judge, Circuit Court, 43rd Judicial Circuit, Respondent.

No. 63885.

Supreme Court of Missouri, En Banc.

Nov. 10, 1982.

As Modified Dec. 3, 1982.

Rehearing Denied Dec. 3, 1982.

**104**

Nolan Chapman, Jr., Chillicothe, for relators.

James W. Henry, Kansas City, for respondent.

SEILER, Judge.

This is prohibition.[1] The case involves statutory redemption of a real estate mortgage or deed of trust. §§ 443.410–440, RSMo 1978.[2] The mortgage holder and the trustee, relators herein, seek to prohibit respondent judge from approving the redemption bond tendered by the mortgagor as respondent has announced he will do unless prohibited. The question presented, not heretofore addressed by this court, is whether the respondent judge will be exceeding his jurisdiction in entering such approval where the mortgagors, subsequent to executing the note and deed of trust which is being foreclosed and on which note the mortgagors remain liable with the mortgagee seeking to collect a deficiency judgment against them, have conveyed the property to a third party, who assumed to pay the mortgage, but failed to do so. The said grantee is himself making no effort to redeem. The redemption statute, § 443.410, provides that where the property is bid in by the mortgagee (which is the case here) same "shall be subject to redemption by the grantor in such mortgage deed of trust or his heirs, devisees, executors, administrators, grantees or assigns at any time within one year from the date of said sale." Relators contend that the original mortgagors having conveyed the property to a third person, only the third person, being the grantee, is eligible under the above provisions to redeem; that the grantors, when they conveyed the property, also conveyed away their right of redemption.

The facts are that William J. and Ann R. Burns made and delivered their $450,000 promissory note to relator Phoenix Mutual Life Insurance Company, secured by a deed

---

1. Prohibition, of course, is not a writ of right. Its issuance in a given case is addressed to the sound discretion of the court. The chief purpose of the writ is to prevent the lower court from acting without or in excess of its jurisdiction. *State ex rel. St. Louis County v. Stussie,* 556 S.W.2d 186 (Mo. banc 1977).

2. Unless otherwise shown, all statutory references herein are to RSMo 1978.

of trust on their 1313 acre farm in Daviess County, Missouri. Thereafter Mr. and Mrs. Burns entered into a contract for the sale of the farm to Elwin Pearey. Included in the contract of sale was a provision whereby Pearey assumed the Phoenix mortgage. Phoenix was not a party to this contract and at no time did Phoenix release Mr. and Mrs. Burns from their note or agree to accept Pearey in their stead. Subsequently, the Burnses conveyed the farm to Pearey, taking back a second deed of trust. As said, Pearey failed to keep up the payments on the Phoenix deed of trust. Phoenix foreclosed and was the only bidder at the sale, which occurred November 20, 1981. Prior to the sale, the trustee was given the required notice by Mr. and Mrs. Burns of their intention to redeem, § 443.420, and thereafter they filed their application for approval of a $250,000 redemption bond with corporate surety. Notice was given the trustee at 9:10 p.m. on December 8, 1981, that the bond would be presented to the court for approval at 2:30 p.m. on December 9, 1981. §§ 443.420–430.

Relators contend at the outset that the notice was not timely and hence respondent judge was without jurisdiction to act on it. Section 443.430 provides that "at least one day's notice" shall be given of the application for approval of the bond.

■ In order for a circuit court to obtain jurisdiction and approve a statutory redemption bond "substantial compliance with the mandatory notice requirement of Section 443.430 is essential..." *State ex rel. Hopkins v. Stemmons,* 302 S.W.2d 51, 53 (Mo.App.1957); noted in *White v. Huffman,* 304 S.W.2d 909, 912 (Mo.App.1957). Substantial compliance can be defined by looking to the purpose of the statutory requirement itself. "[B]y requiring notice of filing and presentation of the redemption bond, the legislature appropriately intended to, and did, provide an opportunity for the purchaser at foreclosure sale to be heard, prior to the approval of the redemption bond." *State ex rel. Hopkins, supra,* at 55, quoted in *White, supra,* at 912. There is no contention that such opportunity was not provided here. The trustee was notified on December 8 that a bond would be presented to the court for approval on December 9. At the appointed hour on December 9 both the trustee and the attorney for relator Phoenix were present in court and were heard at the time of presentation of the bond. "[O]rdinarily the law does not consider fractions of a day. A day is an indivisible point of time; it has neither length nor breadth, but simply position, without magnitude." *Williams v. Williams,* 325 Mo. 963, 967, 30 S.W.2d 69, 71 (1930). The respondent judge held that under these facts "substantial compliance with the statute has been had and, therefore, adequate, proper notice was given." We cannot say that the respondent judge exceeded his jurisdiction in so holding.

Relators next (and main) contention is that Mr. and Mrs. Burns are not among those entitled to redeem. Section 443.410 reads in pertinent part:

... and all real estate which may be sold under any such power of sale in a mortgage deed of trust hereafter made and which at such sale shall be bought in by the holder of such debt ... shall be subject to redemption by the grantor in such mortgage deed of trust or his heirs, devisees, executors, administrators, grantees or assigns at any time within one year from date of said sale ...

Relator contends that the first named person—"grantor"—is replaced by those named later, particularly "grantees or assigns", categories in which Mr. and Mrs. Burns do not fall. The respondent judge, in the order which he proposed to enter if not prohibited from doing so, saw no reason to restrict the statute as relators suggest. Respondent found "[t]hat though Redeemer was admittedly not the fee title holder from the time of publication notice for trustee's sale began through the time redemption bond was presented to the Court, the statute provides that the 'grantor' in the Deed of Trust may redeem and the Court finds no contrary construction of that statute having been directly made by an Appellate Court of this State, and, therefore, finds

that William J. and Ann R. Burns as grantors in the Deeds of Trust of April 23, 1976, have a statutory right to redeem."

What did the legislature intend by the use of the alternative language in the phrase in § 443.410 "subject to redemption by the grantor in such mortgage deed of trust or his heirs, devisees, executors, administrators, grantees or assigns"? Where the grantor has conveyed the property, but remains liable on the mortgage debt, as here, was it intended that only the grantee can redeem? Or was it intended that under some circumstances either can redeem?

■  The statute is remedial. It provides a remedy to assist mortgagors and their grantees. Sutherland, Statutory Construction, Vol. 3, § 60.02 (4th ed. 1974); Real Property, Thompson, Vol. 9, § 4823 (1958); Mortgages, Osborne, § 8 (2d ed. 1970). By its terms the statute is limited to the situation where the property at the foreclosure sale is bid in by the mortgage holder. § 443.410. In that situation, it gives the debtor a second chance. It discourages efforts to bid in the property at less than a fair price.[3]

■  "Redemption statutes are remedial in nature and hence are to be liberally construed, in favor of the redemptioner, and so as to effect their beneficial purpose, especially where no injury will follow such a construction. All doubt will be resolved in favor of the right to redeem . . ." Crawford, Construction of Statutes, § 346 (1940); *see also* 3 Sands, Statutes and Statutory Construction, § 69.04 (4th ed. 1974). "[Where] the statute is remedial . . . it should be construed so as 'to meet the cases which are clearly within the spirit or reason of the law, or within the evil which it was designed to remedy, provided such interpretation is not inconsistent with the language

used . . . resolving all reasonable doubts in favor of applicability of the statute to the particular case.' " *State ex rel. Brown v. Board of Education of City of St. Louis,* 294 Mo. 106, 114–115, 242 S.W. 85, 87 (banc 1922).

■  We believe the beneficial purpose of the redemption statute is to protect those who stand to suffer loss due to foreclosure where the mortgage holder bids in the property, as Mr. and Mrs. Burns will do in this case. We believe that the word "or" appearing in the above quoted portion of § 443.410 is used in its ordinary alternative sense, corresponding to the word "either", *Hawkins v. Hawkins,* 511 S.W.2d 811 (Mo. 1974), and that accordingly the grantor-mortgagor who remains liable on the mortgage debt is accorded the protection of the statute and can redeem as well as the grantee. Here, as stated, the grantee is making no effort to redeem, but the grantor-mortgagor is.

No injury can follow a construction allowing the Burnses to redeem, as Phoenix is protected by the bond and other redemption requirements.[4] If Mr. and Mrs. Burns do redeem, the Phoenix note, with all interest and costs of sale, will be paid in full, thus satisfying the purpose of the Phoenix mortgage which was for security. In fact, to construe the statute in a manner restricting the Burnses from redemption would result in a windfall for Phoenix. While we do not know the value of the 1313 acre farm, it can safely be assumed that Phoenix, as a prudent lender, in making a loan of $450,000 would not thereby loan the full value of the farm. If the Burnses cannot redeem, Phoenix will retain the land, which may well be worth more than the indebtedness, and could proceed with a deficiency suit against Mr. and Mrs. Burns on the note.[5] This

---

3. For the observation that the mortgagee is frequently the only purchaser at the foreclosure sale and statement of the reasons for this occurrence, *see* G. Nelson, Deficiency Judgments after Real Estate Foreclosures in Missouri: Some Modest Proposals, 47 Mo.L.R. 151–52, 163 (1982).

4. No objection is raised by relators as to the amount or sufficiency of the proposed $250,000 redemption bond.

5. We were informed at oral argument that such a suit is pending in the circuit court of Jackson County, No. CV82–2874, filed February 15, 1982.

windfall to Phoenix contrasts sharply with the injury that would befall the Burnses. They remain personally liable on the note; they, rather than the land, would become the satisfier of the debt, and they would be precluded from protecting themselves by being subrogated to the rights of Phoenix as mortgagee upon their payment of the debt.

As earlier pointed out, Mr. Pearey, grantee of Mr. and Mrs. Burns, is making no effort to assert any right to redeem. However, no injury to Pearey can follow permitting Mr. and Mrs. Burns to redeem. In fact, he benefits; otherwise he would lose his interest in the property upon foreclosure of the Phoenix mortgage. If Mr. and Mrs. Burns are permitted to and do redeem, Pearey remains in the same position as he was: he has title to the farm, subject to the mortgages.

■ Where the grantor-mortgagor redeems under the statute, his grantee having failed to pay the assumed mortgage, the grantor-mortgagor becomes subrogated to the rights of the mortgagee, Phoenix in this case, under familiar subrogation principles, and stands in the shoes of Phoenix as mortgagee. Where a mortgagor conveys the land to a grantee who defaults on the mortgage, the "vendor upon payment of the debt becomes entitled to be subrogated to the rights of the mortgage, and in equity the property becomes, as it were, a primary fund for the payment of the debt." *Nelson v. Brown,* 140 Mo. 580, 590, 41 S.W. 960, 962 (1897); *see also Orrick v. Durham,* 79 Mo. 174, 180 (1883). In order to recoup his own loss, the mortgagor, now subrogated to the rights of the mortgagee, redeems not a title to the land but the right to enforce the same lien the mortgagee had enforced. *Orrick, Id.* at 180. "[T]he surety who pays the debt is entitled in equity as against the principal debtor to a revival of the mortgage as of the date he became a surety; that while the right of redemption remains to the principal debtor, equity will permit the surety to exercise such right for his own protection as such; that the net effect of a redemption by the surety in this case will be that he shall have paid the full amount of the mortgage; that it is equitable, therefore, that the mortgage be reinstated in his favor as against the principal debtor; . . ." *Wise v. Laird,* 198 Iowa 357, 199 N.W. 487, 488 (1924).

■ It follows from our analysis of the statute that should both mortgagor and his grantee seek to redeem, the grantee would prevail as to redemption. The grantor-mortgagor's interest in redeeming lies in his personal liability on the note. Where the grantee has extinguished that possibility through redemption, the grantor-mortgagor's remaining interest is nil. As to the

The dissent of Judge Welliver finds it difficult to visualize the possibility of a deficiency judgment if the bid at the Phoenix foreclosure sale was $520,000 on a $450,000 note. The said note which Mr. and Mrs. Burns gave Phoenix on April 23, 1976, called for fourteen annual payments of $13,500 each, commencing March 1, 1977, with a final payment of the balance in full on March 1, 1991, with interest from the date of the note on the unpaid principal. In other words, the note was what is known as a "balloon note", with the final installment amounting to $261,000.

Mr. and Mrs. Burns conveyed to Pearey January 2, 1980. The trustee's sale was November 20, 1981. We do not know from the record when default on the Phoenix note occurred. There is no complete copy of the note in the record and the deed of trust does not state the rate of interest. Assuming interest on the Phoenix note was at 10% (a rate permitted by agreement of the parties at the time, § 408.-030), interest alone would amount to $45,000 per year at the outset. It would not take very long for accumulated interest and unpaid principal to exceed the $520,000, which is only $70,000 above the face of the note.

In addition, the deed of trust requires that proceeds of sale be first applied to compensation of the trustee for executing the sale and to pay other costs and expenses of sale, including abstract charges, then to repayment to lender of any sums advanced to pay insurance premiums or taxes, with interest, then to payment of any unpaid principal, and then to the payment of interest due on the unpaid principal. So it is easily possible that a bid of $520,000 did not discharge the note, as is demonstrated by the conceded fact that a suit for a deficiency judgment is pending by Phoenix against the Burnses. The suit seeks a deficiency judgment for $97,387.24 plus interest, reasonable attorneys' fees and costs.

mortgagee, his rights are protected no matter which one redeems. Whoever redeems, the mortgagee will receive payment in full of the note, interest and other costs, all to which the mortgagee is entitled.

■ Relators' final argument is that inasmuch as the Burnses are merely sureties for Pearey's debt, their interest in the property is slight. Counsel suggests application of § 433.010, contending that thereby Phoenix could be compelled to proceed against Pearey for the deficiency on the mortgage note, and, upon mortgagee's failure to do so, Mr. and Mrs. Burns would be exonerated, § 433.030. This overlooks the fact, however, that no suretyship agreement existed among all three parties—Phoenix, the Burnses and Pearey—and hence no appropriate relationship exists for application of the statute. Although Pearey in the contract of sale with Mr. and Mrs. Burns assumed the Phoenix mortgage, Phoenix was not a party to that contract and Phoenix has not at any time accepted Pearey in place of Mr. and Mrs. Burns or agreed to look to him first. The mortgagee is not bound by a surety agreement between the mortgagor and his grantee. "If the rule be otherwise, then a mortgagor could, by merely transferring the mortgaged property to another, who, whether solvent or insolvent, would agree to assume the debt, compel the mortgagee to recognize such relationship." *Speer v. Home Bank of Forest City*, 200 Mo.App. 269, 277–278, 206 S.W. 405, 408 (1918).

The distinction is made clear in the early case of *Connecticut Mut. Life Ins. Co. v. Mayer*, 8 Mo.App. 18, 21, 23 (1879): "There is abundant authority for the position that when a mortgageor (sic) conveys the mortgaged property, his grantee assuming to pay the mortgage debt, the grantee becomes, as between these parties, the principal debtor, and the grantor the surety. But the question to be here determined is, whether these relations arise also as to the creditor.

" . . .

"These views [the court was here referring to cases from other jurisdictions] appear to be clearly consonant with the principle that the contract rights of the mortgagee cannot be changed by acts of the mortgageor and his grantee to which the creditor is not a party. He may therefore continue to hold the mortgageor as a principal debtor . . ."

■ In conclusion, therefore, respondent judge will not be exceeding his jurisdiction in entering an order approving the redemption bond tendered by the grantors-mortgagors, Mr. and Mrs. Burns, and the writ absolute in prohibition heretofore issued against respondent in this cause by the western district of the court of appeals (following which the cause was ordered transferred to this court on application of respondent) is ordered quashed.

Only a short time remains in the one year period of redemption allowed by the statute following the sale, most of the time during said year having been occupied with the current litigation despite the expedited efforts of the parties and the courts concerned to dispose of the matter. Under our rule 84.14 we are mandated to give such judgment as the court ought to give. To avoid our judgment constituting a useless act and for it to be effective, there needs be a reasonable time made available for the parties to perform thereunder. Therefore, the trustee, Lawrence W. LeFevre, and the mortgagee, Phoenix Mutual Life Insurance Company, both being parties hereto, are ordered not to convey or otherwise dispose or encumber the subject matter real property until the grantors-mortgagors, William J. Burns and Ann R. Burns, have a reasonable length of time, not to exceed ninety days from the date of filing of this opinion, in which to complete the redemption process sought by them.

RENDLEN, HIGGINS and GUNN, JJ., and FINCH, Senior Judge, concur.

DONNELLY, C.J., concurs in result in separate opinion filed.

WELLIVER, J., dissents in separate dissenting opinion filed.

BILLINGS, J., not participating because not a member of the Court when cause was submitted.

DONNELLY, Chief Justice, concurring in result.

This is prohibition.

In my view, a determination of *equities* and *windfalls* is inappropriate in prohibition. *Cf. State ex rel. Smith v. Greene,* 494 S.W.2d 55, 61 (Mo. banc 1973) (Donnelly, J., dissenting).

I concur only in the result.

WELLIVER, Judge, dissenting.

I respectfully dissent.

Section 443.410, RSMo 1978, clearly contemplates that the right of redemption vest alternatively rather than concurrently. It grants that right to "the grantor in [a] mortgage deed of trust *or* his heirs, devisees, executors, administrators, grantees or assigns." *Id.* (emphasis added). Because heirs, devisees, executors, and administrators are merely representatives of a deceased grantor, they are for the purpose of redemption but the alter ego of the grantor. The statutory language places grantees and assigns within that same category. Reduced to ultimate simplicity, as regards this case the statute grants a right of redemption to the grantor *or* his grantees or assigns. The principal opinion, through the exercise of some notion of equity, would grant that right to *both* the grantor *and* his grantees or assigns. Such a construction tortures the statute. Our power to construe statutes is not a power to rewrite them, and the belief that equity is necessary in a particular case has never been recognized as a valid basis for the expansion of that power. I deem citation of authority for these propositions unnecessary.

The record before us leaves as many questions unanswered as it answers and, at best, consists only of bits and pieces that must be tediously gleaned from the official record, the briefs, and the oral argument. It is most notable for the paucity of known facts and the glaring absence of facts that could shed light on the true equities of the parties.

The Burnses purchased the property in question from Meadows & Meadows, Inc., which carried back a first deed of trust securing payment of the principal sum of $307,500. The Burnses then applied to Phoenix Mutual Life Insurance Company for a loan of $450,000. As a condition precedent to obtaining the loan, the Burnses were required to obtain from Meadows an agreement subordinating its deed of trust to that of Phoenix. The subordination agreement recited only nominal consideration. The Phoenix deed of trust thus became the first deed of trust, and the Meadows deed of trust became the second. The Burnses then sold the property to Pearey, executing a simple warranty deed containing no reservations and no assumption agreement. The deed makes the usual recitation that the property is free and clear of all encumbrances. The total recited price of the property was $1,041,152. One sentence in the contract for sale of the real estate, which apparently was unrecorded, constituted Pearey's agreement to assume the Phoenix and Meadows deeds of trust. On January 2, 1980, Mr. and Mrs. Pearey executed a note to the Burnses for $133,600 that was secured by a third deed of trust on the property. There was no recitation in the third deed of trust that it was subject to the two prior deeds of trust. On January 8, 1980, the Burnses unconditionally assigned and discounted the note to the Fidelity State Bank of Kansas City, Kansas, for the recited sum of $100,000. There was no indication that Meadows, the Fidelity State Bank, or the Burnses requested notice of foreclosure proceedings pursuant to § 443.-325, RSMo 1978. Neither is there an indication in the record that either Meadows or the Fidelity State Bank had actual notice of the foreclosure sale.

The only bidder at the foreclosure sale was Phoenix, which bid approximately $520,000. The third deed of trust, which was unconditionally assigned to the Fidelity State Bank, was released of record August 10, 1982, following the foreclosure proceed-

ings of November 1981. The record is silent as to whether, or by whom, the deed of trust was satisfied or as to why it was released.

Nothing indicates the true present value of the property.

Pending in the Circuit Court of Jackson County is a suit, No. CV82–02874, in which Phoenix seeks to recover a deficiency from the Burnses and damages on the redemption bond. Given the fact that the security for the $450,000 note brought $520,000 at the foreclosure sale, it is difficult to visualize the possibility of a deficiency judgment. Two suits are pending in Daviess County. In the first, No. CV381–179–CC, the Burnses seek contract damages of $841,000 against Pearey. In the second, No. CV381–181–CC, Meadows has moved to set aside an adverse summary judgment and to file an amended petition seeking, among other things, to set aside the subordination agreement on grounds of fraud and lack of consideration and to recover $500,000 in damages from Phoenix. The amended petition alleges that Phoenix, through its attorneys, defrauded Meadows into executing the subordination agreement. At oral argument, however, we were told by Phoenix's attorney that the Burnses procured the subordination agreement.

On the confused facts before us, I am hard pressed to find the clean hands that would justify equitable relief. I fear that the Court is making an arbitrary selection, under the guise of equity, of who should be allowed to reap the benefits, if benefits there be, that may be inherent in this foreclosure. We disserve the Missouri financial industry and all who desire to borrow money on real estate when we cloud the existing clean and expeditious foreclosure procedures surrounding our lien-type security instruments with the unnecessary delays of twelve to fifteen months here contemplated. The court of appeals did not err in granting its writ of prohibition.

The writ of prohibition should be made absolute.