Dear Mr. Lafser:
This letter constitutes a second addendum to Opinion Letter No. 41-83 and the memorandum opinion attached thereto, dated January 31, 1983. This letter, along with Opinion Letter No. 41-83 and the first Addendum to Opinion Letter No. 41-83, dated July 12, 1983, constitute the Attorney General's statement required by 40 CFR 271.125 (formerly 40 CFR 123.125) as part of the application for interim authorization submitted to the U.S. Environmental Protection Agency by the Missouri Department of Natural Resources pursuant to 40 CFR Part 271, Subpart F (formerly40 CFR Part 123, Subpart F).
You have requested this addendum because EPA has requested further clarification on five matters. We will separately state and answer each question prompted by the federal agency's request for clarification.
1. Is the term "criteria" as used in Section 260.370.3(1)(a) equivalent to the term "characteristics" as used in40 CFR Part 261, Subpart C, so as to authorize the Hazardous Waste Management Commission to adopt the characteristics regulations at10 CSR 25-4.010(2)-(5)?
It is our opinion that the term criteria, as used in Section260.370.3(1)(a), RSMo Supp. 1982, and the term characteristics, as used in the federal regulations at 40 CFR Part 261, Subpart C, are equivalent in meaning, and that Section 260.370.3(1)(a) does authorize the Hazardous Waste Management Commission to adopt the hazardous characteristics regulations found at 10 CSR 25-4.010(2)-(5).Webster's New International Dictionary, Second Edition (1952), defines criterion as "a characteristic mark or trait." The term characteristic is defined in the same publication as "a trait, quality or property distinguishing an individual, group or type." Thus, it is clear that the two terms are essentially synonymous.
As noted at page 3 of the memorandum accompanying Opinion Letter No. 41-83, the hazardous characteristics regulations at10 CSR 25-4.010(2)-(5) are substantially identical to the federal characteristics regulations at 40 CFR 261.21-.24. Section260.370.3(1)(a) authorizes the Hazardous Waste Management Commission to adopt regulations "establishing criteria and a listing for the determination of whether any waste or combination of wastes is hazardous. . . ." We believe that as criteria and characteristics are essentially synonymous terms, Section 260.370.3(1)(a) authorizes the Commission to adopt regulations setting forth characteristics by which a waste is deemed hazardous, as was done at 10 CSR 25-4.010(2)-(5).
2. Does Section 260.370.3(1)(a) authorize the Hazardous Waste Management Commission to adopt the lists of hazardous wastes found at 10 CSR 25-4.010(6)?
Section 260.370.3(1)(a), RSMo Supp. 1982, provides that the Hazardous Waste Management Commission shall adopt regulations "establishing criteria and a listing for the determination of whether any waste or combinations of wastes is hazardous. . . ." We specifically stated at page 4 of the memorandum accompanying Opinion Letter No. 41-83 that this provision authorizes the Commission to adopt the lists of hazardous wastes found at10 CSR 25-4.010(6). We understand the Environmental Protection Agency to now ask whether a listing for the determination of whether a waste is hazardous is the same as a list of hazardous wastes.
We frankly do not understand why EPA is having difficulty understanding this provision. A "listing" could involve nothing more than the development of one or more lists. The lists authorized by the legislature are to be used to determine whether a waste is hazardous. An obvious way in which this mandate can be achieved is by promulgating lists of wastes which will be deemed hazardous, either by chemical name, or by reference to the process or source by which the waste is generated, as EPA has done at 40 CFR 261.31.33, and as the Commission has done at 10 CSR 25-4.010(6). We think it abundantly clear that Section 260.370.3(1)(a) authorizes the lists contained in 10 CSR 25-4.010(6).
3. Does the exemption from facility permitting contained in Section 260.395.13(2) affect any exclusion of domestic sewage from the scope of substances regulated as hazardous waste under Sections 260.350 to 260.430, as does 40 CFR 261.4(a)(1)?
We understand that this question was prompted by a question posed by EPA, as follows: "Is Section 260.395.13(2) equivalent to and no less stringent than the RCRA domestic sewage exemption?" Your staff has expressed to us, and we agree, that the question posed by EPA asks for a comparison of legally dissimilar provisions, and is not relevant to the essential question whether the state program controls a universe of hazardous wastes nearly identical to that controlled under the federal regulations at40 CFR Part 261. See 40 CFR 271.128(a).
Section 260.395.13(2), amended by H.B. 528, 82nd General Assembly, effective June 27, 1983, provides for an exemption from facility permitting requirements for publicly-owned treatment works (POTWs), so long as certain conditions are met. This exemption says nothing about whether the substances coming to the treatment plant are or are not hazardous wastes. It simply says that so long as the specified conditions are met, the POTW need not obtain a hazardous waste facility permit.
On the other hand, the federal domestic sewage exemption referenced in EPA's question does affect the universe of waste regulated. Under 40 CFR 261.4(a)(1), solid waste does not include domestic sewage, or mixtures of domestic sewage and other wastes discharged to POTWs. A material must qualify as a solid waste before it can be considered as a hazardous waste.40 CFR 261.1(a) and 261.3(a). Therefore, under federal regulations a waste which could otherwise be considered a hazardous waste will escape regulation under the Resource Conservation and Recovery Act (RCRA) once it is discharged into a sewer system tributary to a POTW, thus excluding such waste from the universe of waste regulated under the federal program.
In summary, the exemption from facility permitting requirements contained in Section 260.395.13(2) affects no exclusion of domestic sewage from the universe of substances regulated as hazardous waste under the state regulatory program.
4. Does the definition of "waste" at Section 260.360(17) use the term "material" in its generic sense, so as to subject materials to regulation as waste if those materials are sometimes discarded, as is provided in 40 CFR 261.2(b)(2) and (3), or does Section 260.360(17) have reference to material in the specific sense, such that the person in possession of the material must form an intent to discard the material before it becomes a waste?
Section 260.360(17), RSMo Supp. 1982, defines waste as
 Any material for which no use or sale is intended and which will be discarded or any material which has been or is being discarded. "Waste" shall also include certain residual materials, to be specified by the rules and regulations, which may be sold for purposes of energy or materials reclamation, reuse or transformation into new products which are not wastes.
EPA regulations at 40 CFR 261.2 use the term solid waste, rather than waste. Subsection (a) defines solid waste as "any garbage, refuse, sludge or any other waste material which is not excluded under § 261.4(a)." Subsection (b) of 40 CFR 261.2
contains definitions of "other waste material." Among those definitions are paragraphs (b)(2) and (b)(3), which specify that the described material "sometimes is discarded".
We understand EPA's concern to be that the definition of waste as contained in Section 260.360(17) may refer to materials only in what EPA characterizes as a specific sense, that is, only where the generator has formed an intention to discard materials, rather than in the generic sense as used in the federal regulations, where a particular material is always a waste, because that material is sometimes discarded by generators. We believe that the legislature used the term material in Section 260.360(17) in its generic sense, with reference to classes of substances, not with reference to the substances as specifically handled by individual generators, transporters and facility operators.
While the first sentence of Section 260.360(17) may be somewhat ambiguous on this point, the second sentence of the definition of waste makes it clear that the legislature is speaking in the generic sense. The legislature could not have intended to require the Hazardous Waste Management Commission to adopt regulations specifying residual materials in the hands of individual generators, transporters or facility operators, in order to be able to regulate such materials as waste. Instead, we think it clear that the legislature envisioned that the Commission would designate those residual materials by generic class or type, and that the materials, once designated, would be subject to regulation without regard to the specific intentions of the particular generator, transporter or operator.
We do not believe that the legislature would have used the term material in the first sentence of Section 260.360(17) in a diametrically different sense than used in the second sentence of that provision. Further, remedial statutes such as Sections260.350 to 260.430 are to be given a liberal construction, so as to meet the cases which are clearly within the spirit and reason of the law, and so as to meet the evil which the statutes are designed to remedy, resolving all doubts in favor of applicability of the statutes to particular cases, provided that such interpretation is not inconsistent with the language used. State exrel. LeFevre v. Stubbs, 642 S.W.2d 103 (Mo. banc 1982). Interpreting Section 260.360(17) to apply to materials in the generic sense is not inconsistent with the language used in the provision. Such a construction has the effect of bringing within the scope of the regulatory program the broadest range of hazardous substances, thus furthering the legislative goal of protecting the public health and the environment from the dangers of hazardous wastes.
We believe that the definition of waste as contained in Section 260.360(17) is as broad as the definition of solid waste in 40 CFR 261.2, and with specific reference to the question raised by EPA, is as broad as the definition of "other waste material" found in 40 CFR 261.2(b). We believe that Section260.360(17), in regulating discarded and residual materials in their generic sense, covers materials which are sometimes discarded, as well as those materials which are routinely or always discarded. Thus, the state term "waste" and the federal term "solid waste" are equivalent.
5. May the Hazardous Waste Management Commission promulgate regulations containing requirements adopted by reference from federal regulations?
The Hazardous Waste Management Commission is given broad rulemaking authority in a number of areas of hazardous waste regulation, which need not be detailed here. Nowhere in Sections260.350 to 260.430, RSMo, is the subject of rulemaking by adoption by reference addressed, either expressly or by implication. However, we are aware that it has been the common practice for a number of years for administrative agencies, both at the state level and at the federal level, to adopt provisions by reference in their regulations. The Missouri legislature is aware of this practice, and obviously approves thereof. Section 536.021.2(3), RSMo 1978, in setting forth procedures for rulemaking by administrative agencies, provides, inter alia, that "[a] proposed rule may incorporate by reference only if the material so incorporated is retained at the headquarters of the state agency. . . ." It is clear from this provision that the legislature has anticipated that administrative agencies will use the procedure of adoption by reference, and that the legislature approves of such practice. We think that the practice of adoption by reference is authorized under Missouri law.
The above clarifications do not alter the opinions expressed in Opinion Letter No. 41-83, dated January 31, 1983, or the First Addendum to that opinion letter, dated July 12, 1983.
Sincerely,
 JOHN ASHCROFT Attorney General