In re JOSTCO, INC., d/b/a X–L Equipment Co., d/b/a Quest Central States Cleanair, Debtor.

CASS BANK & TRUST COMPANY, Plaintiff,

v.

LEMAY BANK & TRUST COMPANY, Frank Jost and Barbara Jost, Defendants.

Bankruptcy No. 90–00208–293.

Adv. No. 90–0199.

United States Bankruptcy Court, E.D. Missouri, E.D.

Feb. 8, 1994.

Daniel J. Doyle, St. Louis, MO, for plaintiff Cass Bank & Trust Co.

Stuart J. Radloff, Clayton, MO, for defendants Frank and Barbara Jost.

Edward J. Karfeld, St. Louis, MO, for debtor Jostco, Inc.

Vincent D. Vogler, St. Louis, MO, for creditors' committee.

James T. Barry, Jr., Clayton, MO, for defendant Lemay Bank & Trust Co.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), (O) and (K), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

1. Debtor, Jostco Inc. (Jostco), filed a voluntary petition for bankruptcy relief on January 18, 1990.

2. The Court entered a cash collateral order in the Debtor's case on March 29, 1990. One paragraph of that order specified that Jostco would "segregate, when received, in a separate interest bearing account, the proceeds of the account receivable from Shriner's Hospital. The funds in said account shall be held subject to existing liens, and shall be disbursed pursuant to order of the Bankruptcy Court." Lemay Bank & Trust Company (Lemay), who had previously lent money to the Debtor, provided Jostco with the financing that the cash collateral order approved. That order continued Lemay's prior security interest in full force and effect. Further, the cash collateral order extended Lemay's security interest to property the Debtor acquired after January 18, 1990 and granted Lemay a replacement security interest. Finally, the Court's order permitted Jostco's delivery to Lemay of the proceeds of the collateral sold under the order's authority. By its terms, this order expired on April 30, 1990.

3. In response to a motion by the Debtor (Motion G), this Court, in an order filed March 26, 1990, authorized the sale of certain assets free and clear of all liens. The Court's order required Jostco to place the proceeds of the collateral sold pursuant to it in a segregated account. The order specified that the funds held in the segregated account would be "subject to the claims of the secured creditors and subject to further order of this Court."

4. Cass Bank & Trust Co. (Cass), a secured creditor of the Debtor, filed this adversary seeking a marshaling of assets and a determination of the validity of Lemay's security interest in the property of Jostco that served as collateral for both Lemay and Cass. The suit did not name Jostco or Frank and Barbara Jost as defendants.

5. Cass and Lemay ultimately agreed to settle Cass's adversary. They presented a settlement to the Court that ordered Lemay to disgorge itself of $57,130.00 representing funds that the Debtor had derived from the Shriner's Hospital account receivable and the collateral sales made pursuant to the Court's March 26, 1990 order. The settlement then directed that these funds be placed in an escrow account and created rules for paying them and sums received from future sales of collateral to the two parties.

The settlement also sought to mandate a "marshalling" of assets. Under the settlement's "marshalling", Lemay would look first to the notes securing the Josts' guaranty for payment of its claim before satisfying that claim from the collateral that secured both banks' loans to Jostco.

6. The Josts appeared at the hearing on the settlement's approval.[1] They objected to the disgorgement of funds and to the fact that neither they nor Jostco had been included as defendants to the suit. The Court orally overruled the Josts' objections and entered an order approving the settlement Lemay and Cass had reached.

7. The Josts appealed to the District Court. After finding that the Josts were necessary parties to Cass's suit against Lemay, Judge Cahill vacated this Court's order approving the settlement and remanded the case to this Court with instructions that the Josts be joined in the suit as necessary parties. The District Court noted that it was

---

1. Notice of this hearing was sent to the Josts, the United States Trustee, the Unsecured Creditors' Committee and Jostco. Only the Josts objected to the settlement's approval.

only addressing the issue of nonjoinder. *Frank and Barbara Jost v. Cass Bank & Trust Co. (In re Jostco)*, No. 91–0209–C, slip op. at 2, 1991 WL 575827 (E.D.Mo. Sept. 12, 1991). The District Court did not find that the Josts have an interest in the subject matter of the suit between the banks. Rather, Judge Cahill held that the Josts "claim an interest relating to the subject matter of this action; it is their personal guaranty of Jostco's debt which is at stake." *Id.* at 3. The District Court further held that "[i]t is equally clear that, as a practical matter, the Josts' ability to protect that interest would be impaired by the bankruptcy court's disposition of the action in their absence." *Id.* Finally, the District Court suggested that "had the bankruptcy court been appraised of all the facts and consequences of the agreement between the creditors of the debtor, the final order of the court may have been different … IT IS HEREBY ORDERED that the Bankruptcy Court should reconsider its motion in light of the appeal by the Josts and the possible ramifications of the agreement between the two creditors." *Id.* at 4.

8. Following the entry of the District Court's order, Cass moved this Court to join the Josts as parties to its adversary and, simultaneously, renewed its motion to enforce the settlement between it and Lemay.

9. The Josts filed a motion asking the Court to dismiss this case on any of three separate grounds. The Josts' motion first argues that Cass's complaint fails to state a cause upon which relief may be granted and so should be dismissed. Second, the Josts insist that because Cass has not established that the debtor possesses the two funds that it wants the Court to marshal, its request for marshalling fails on its face. Third, the Josts argue that this Court should dismiss the complaint because we lack jurisdiction to hear it.[2]

10. The Court joined the Josts to this action and, on November 21, 1991, held a hearing on the renewed motion. Mr. Radloff represented the Josts at that hearing. Mr. Doyle represented Cass at the hearing. The parties present at the hearing, the Josts and Cass, were given an opportunity to present the testimony of witnesses to the Court. The parties chose not to present any witnesses, instead, after submitting briefs, numerous exhibits and orally arguing the merits of the case, Mr. Radloff and Mr. Doyle agreed to submit the case to the Court.

## FACTUAL BACKGROUND

1. Before seeking bankruptcy relief, Jostco had borrowed money from both Lemay and Cass.[3]

2. Lemay held a security interest in the same collateral that secured Cass's loan. Lemay's interest had priority over Cass's.

3. Frank and Barbara Jost personally guarantied the loan Lemay made to Jostco. This guaranty was unconditional and made the Josts personally liable for the Lemay loan. (Cass Ex. 8). As part of the guaranty, the Josts signed over to Lemay, their interest in some secured notes Southside Machine Co. (Southside notes) had made in favor of Frank Jost. (Cass Ex. 5 & 6).

4. Jostco received $31,744.27 from Shriner's Hospital and paid it over to Lemay on July 27, 1990.

---

**2.** As the ensuing decision makes clear, the Josts arguments for dismissal lack merit. The Court will deny the Josts' motion to dismiss.

**3.** On February 28, 1986, Lemay Bank & Trust loaned $400,000.00 to Jostco. [Cass Ex. 1] The note evidencing the loan lists the following as collateral for the loan:

Security Agreement dated 2–28–86 on all business assets located at 9239–41 Manchester Rd.; Promissory note executed by South Side Machine Works in the amount of $219,630.00 and pledged by Frank Jost; Assigned General American Life Insurance policy # 3019827;

Personal loan guaranty of Frank and Barbara Jost.

On two other occasions, June 8, 1989 and August 1, 1989, Lemay approved lines of credit for Jostco. [Cass Ex. 2 & 3] In each case, the line of credit was secured by "Security agreement covering all fixtures (sic) furniture, equipment, inventory, machinery, acct. receivable now owned or hereafter acquired and the proceeds thereof plus assignment of promissory note."

From July of 1989 through October of 1989, Cass Bank, in five transactions, loaned Jostco $216,150.00. [Cass Ex. 9]

5. During the time spanning July through August of 1990, Jostco paid the proceeds of other collateral and accounts receivable over to Lemay. These deposits, together with the amounts derived from the Shriner's Hospital account receivable totalled more than $65,000.00. After receiving these funds, Lemay made accounting entries reducing the balance Jostco owed it.

## DISCUSSION

In his argument at the hearing, Mr. Radloff attacked the settlement saying that marshalling only applies in narrowly-delineated factual circumstances not present in this case. Specifically he maintained that marshalling only applies where:

(1) a debtor possesses two funds; and

(2) two creditors hold claims against the debtor, the senior of whom possesses the right to satisfy its claim from either source of funds and the junior of whom can only satisfy its claims against the creditors' mutual debtor from one source of funds.

Mr. Radloff argued that Lemay and Cass's mutual debtor, Jostco, does not possess two funds. He based this assertion on the fact that the second fund in this case, namely, the secured notes out of which the settlement directs Lemay to satisfy its claim, belongs, not to Jostco but to the Josts. Counsel for the Josts admitted that his clients could not prevent Lemay from first looking to the secured notes to satisfy its claim because the guaranty they signed gives Lemay that right; however, he insisted that, in such circumstances, the Court could not invoke the doctrine of marshalling to order Lemay to do so.

In reply, Mr. Doyle, Cass's attorney, argued that the Court should approve the settlement the two banks had reached because its disapproval would cause Cass's claim to become unsecured. This would result in a lower pro rata payout to all of the Debtor's unsecured creditors. He justified the marshalling on the ground that the Josts, in guarantying the loan Lemay made to Jostco, had given Lemay the right to look to the Southside notes for payment of that loan and

that they should not, therefore, be able to complain that the settlement orders Lemay to do so.

The Eighth Circuit faced a situation similar to the case at bar in *Berman v. John F.B. Green (In re Jack Green's Fashions For Men—Big and Tall)*, 597 F.2d 130 (8th Cir. 1979). There, the two shareholders of a corporate debtor had pledged real property they owned to Centennial Bank and Trust of Mission, Kansas (Centennial) as security for a loan Centennial made to their corporation.[4] Centennial also held the senior security interest in the corporation's business assets. *Id.* at 132. When it filed its bankruptcy, the corporation in the *Jack Green's* case owed Centennial $65,000.00. *Id.* A sale of the corporation's business assets generated $28,000.00 and the real property which secured Centennial's loan had an estimated value of $135,000.00. *Id.* The trustee in *Jack Green's* filed an application for marshalling asking the bankruptcy court to order Centennial to satisfy its claim from the real property. *Id.* The bankruptcy court recognized that the corporation's general, unsecured creditors would not receive any distribution if Centennial satisfied its claim out of the $28,000.00 the business assets had generated and "dismissed the claim of the Bank [Centennial] in the bankruptcy proceedings and directed that the Bank proceed against the real estate that had been mentioned. However, the dismissal of the claim in bankruptcy was without prejudice to renewal should the Bank be unable to obtain satisfaction of its claim from its real estate security." 597 F.2d at 132. The district court affirmed the bankruptcy judge's order and the Eighth Circuit affirmed the district court. *Id.* Judge Henley, writing for the Circuit Court, noted that bankruptcy courts possess equitable powers and, when necessary to achieve equity, may utilize those powers to order a marshalling. 597 F.2d at 133. Judge Henley observed that "[i]n this case it would be in the highest degree inequitable to allow the Bank to exhaust the business assets of the

---

4. When the shareholders pledged the property to the bank they had not yet incorporated their business but, instead, operated it as a partnership. 597 F.2d at 131–32. Upon its creation, the corporation the partners formed "took over the business of the partnership, acquired title to its assets, and assumed its obligations, including the debt to the Bank [Centennial]." *Id.* at 132.

corporate bankrupt without first looking to the real estate mortgaged to it. To permit such a course would leave the general unsecured creditors of the business with nothing". *Id.*

This case is virtually indistinguishable from the *Jack Green's* case. In both cases, a failure to order a dominant creditor to satisfy its claim from funds legally accessible to it would effectively take money from the unsecured creditors of the debtor business and give it to the guarantor of that business's debt. Such a result offends equity.

Some minor facts, however, distinguish this case from the *Jack Green's* case. One difference between the two cases is that in the *Jack Green's* case, the trustee requested the marshalling while in the case at bar a creditor requested the marshalling. The Court does not believe that this should alter the outcome, for in both cases a failure to marshal would significantly decrease the value of the bankruptcy estate and, hence, the pro rata distribution the general unsecured creditors would receive.

A second distinction between the facts of this case and those before the *Jack Green's* court is that the creditors in the *Jack Green's* case would not have received any distribution if the court had not ordered Centennial to satisfy its claim against the debtor out of the real estate that secured its loan while Jostco's general unsecured creditors would still receive some distribution if this Court refused to order the marshalling set forth in Cass and Lemay's settlement. This distinction does not merit a departure from the rule announced in the *Jack Green's* case, for a failure to approve the settlement Cass and Lemay have entered into will significantly decrease the funds available to Jostco's unsecured creditors.

█ Jostco lawfully incurred the debts owed to both Cass and Lemay and the Josts freely guarantied the loan Lemay made to Jostco. As in the *Jack Green's* case, equity demands that the estate available to Jostco's innocent, unsecured creditors be maximized. The settlement between Cass and Lemay maximizes the value of Jostco's estate and will be approved by the Court.

Mr. Radloff suggested, at the November 21, 1991 hearing on this matter, that the marshalling issue is moot because Lemay is already voluntarily satisfying its claim against the Debtor in the manner the settlement contemplates. The fact that the Court's approval of the settlement will not trigger a change in Lemay's behavior does not render the issue moot. This is because without the order, Lemay is free to alter its behavior but upon entry of the order, Lemay would lose such flexibility.

█ Counsel for the Josts also argued that the settlement improperly seeks to disgorge Lemay of funds that Jostco paid over to it. He maintains that such action would violate the doctrine of payment which states that a payment becomes fixed and is not subject to reallocation when a creditor receives the payment and, with the knowledge of all parties, enters it on its books. Mr. Radloff pointed out that one effect of the disgorgement will be to increase the amount the Josts will owe Lemay on their personal guaranty.

In response, Mr. Doyle argued that the funds the settlement seeks to disgorge should not have been paid to Lemay and that Jostco, in doing so, contravened the orders of this Court requiring it to place those funds in segregated accounts. After reviewing the record, the Court agrees with Mr. Doyle. The funds that the settlement disgorges were paid over to Lemay in the face of orders of this Court that instructed the Debtor to pay them into separate accounts subject to the claims of its secured creditors. Specifically, Jostco, contrary to the cash collateral order entered in this case, paid more than $31,-000.00 it received from Shriner's Hospital to Lemay. The cash collateral order directed Jostco to deposit that money in a segregated account. Jostco also transferred to Lemay more than $34,000.00 of the funds it received from the consignment sales of its equipment. The order approving the sale of that equipment directed Jostco to deposit the proceeds it received into a separate account. Had the orders of this Court not barred Jostco from paying to Lemay the sums it received from Shriner's Hospital and the buyers of the collateral sold pursuant to the order granting Debtor's motion G then, perhaps, there

might be merit to the Josts' argument that the doctrine of payment prohibits the disgorgement the settlement effects.[5] Equity requires the disgorgement of these funds.

 Finally, the Josts argue that the Court cannot approve the settlement because not all the parties to the suit are in favor of the settlement. In other words, there is no agreement for the Court to approve. Cass answers, saying that the test for approval of the settlement is the best interests of the estate. Mr. Doyle, on behalf of Cass, insists that this agreement between the banks serves the best interests of the estate because if Lemay recovers the amounts Jostco owes it from the collateral in which both Cass and Lemay claim an interest, then any amount owed to Cass would become an unsecured claim against Jostco's estate and so decrease the pro rata distribution to Jostco's creditors. Again, the Court agrees with Cass's position. While the Josts do not join in the settlement, they had an opportunity to present their argument and evidence in opposition to the settlement's approval to the Court. After considering the record, the Court is confident that the settlement Cass and .Lemay have reached serves the best interests of the estate's creditors and does not violate the Josts' rights.

An Order consistent with this Memorandum Opinion will be entered this date.

### ORDER

Upon Motion of Cass Bank & Trust and after Notice and a hearing and upon consideration of the pleadings, argument of counsel, and examination of the record as a whole, for the reasons stated in the memorandum opinion filed this date

IT IS ORDERED that:

1. Josts' Motion to Dismiss filed November 4, 1991, IS DENIED; and

2. the settlement between Cass Bank & Trust Company and Lemay Bank and Trust Company dated December 20, 1990, as modified by the Motion for Joinder of Parties, is approved as reasonable and in the best interests of the Debtor and its creditors.

---

5. The Court says that in such circumstances the doctrine of payment might apply because that doctrine is subject to equitable concerns, *Berns Bros. Inc. v. Keller*, 703 S.W.2d 507, 509 (Mo.Ct. App.1985), and the fact that the ultimate beneficiaries of the disgorgement in this case are Jostco's unsecured creditors, not the creditor who recorded the payment, would weigh against the doctrine's application.