BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1918.

JOHN SPEER, Appellant, v. THE HOME BANK OF FOREST CITY, Respondent; W. H. RICHARDS, MARTIN GRAHAM and DELPHIA ANN GRAHAM, Defendants.

**Kansas City Court of Appeals, Nov. 11, 1918.**

1. **DEEDS OF TRUST: Priority of Liens: Equity.** Where a creditor has a lien on two parcels of property, and another creditor has a lien upon but one of them, the former creditor will, in equity, be required to seek satisfaction out of that fund or parcel upon which the other creditor has no lien.

2. ———: ———: ———. A person having a right or interest in property, which he is obliged to protect by paying a mortgage thereon, will, if he is not primarily responsible for such mortgage debt, be subrogated to the rights of the mortgagee to the extent necessary for his own protection.

3. ———: **Principal and Surety: Assumption of Encumbrance.** The relationship of principal and surety between a grantor and a grantee, created by the latter agreeing and assuming to pay a mortgage on the property, does not affect the relation between the mortgagor and the mortgagee. The mortgagee cannot be compelled to treat the grantee as the principal debtor because the latter assumed the payment of the mortgage when he purchased the property.

Appeal from Holt Circuit Court.—*Hon. Arch B. Davis*, Special Judge.

REVERSED AND REMANDED (*with directions*).

*Kennish & Smith* and *Frank Petree* for appellant.

*R. B. Bridgeman* and *S. F. O'Falton* for The Home Bank of Forest City, respondent.

*E. E. Richards* and *H. B. Williams* for Martin and Delphia Ann Graham, defendants.

TRIMBLE, J.—Plaintiff and the defendant, Home Bank of Forest City, were each creditors of the defendant, Martin Graham; their respective debts being secured by the same deed of trust on his real estate, plaintiff's lien, however, being the junior of the two. The bank, in addition to its lien, also held another security for its debt in the shape of a chattel mortgage on Graham's personalty. It was about to foreclose its lien on the real estate when plaintiff, to protect his junior lien, notified the bank of the situation and offered to purchase its note in full and deposited in the bank sufficient money for that purpose together with a check to pay everything due thereon. The cashier and president of the bank were willing to sell plaintiff the note but when authority of the directors was sought, as the statute requires, they refused to sell the note to plaintiff unless he would agree to a release of the chattel mortgage, a condition to which he would not submit. He then served written notice upon the bank renewing his offer to purchase the note in order to protect his junior and only security, and requesting the bank, in case it refused to sell him its note, to first foreclose its lien on the personalty. The bank refused to do either, and was about to foreclose the deed of trust when plaintiff brought this suit in equity to enjoin the bank from proceeding until it had first foreclosed the chattel mortgage, or to compel the bank to transfer its note to plaintiff upon payment of the amount thereof. Graham, his wife (who joined him in the execution of the notes and deed of trust), and Richards, the trustee

therein, were also made parties defendant, the last two having no other interest in the suit.

The bank and Graham filed separate answers. Graham included in his a cross-bill praying special and affirmative relief which will be hereinafter mentioned. The chancellor found against Graham on his cross-bill, but, on the issues raised by the petition, found that plaintiff was not entitled to relief and dismissed his bill. Plaintiff appealed from this decree but Graham failed to perfect any appeal. from the denial of the affirmative relief he sought in' his cross-bill. Plaintiff's appeal was taken to the Supreme Court but, as the title to real estate was not involved in the jurisdictional sense, that court transferred the case to this court. [Speer v. Home Bank of Forest City, 199 S. W. 139, it being there entitled Speer v. Graham et al.]

The controversy grew out of the following facts: February 21, 1913, Speer sold Graham 120 acres of land in Holt county, Missouri, upon a consideration placed at $18,000. There was on the farm an encumbrance of $8000 held by one Cook. Graham assumed and agreed to pay this as a part of the purchase price and for the remainder thereof he executed to Speer three notes, one for $1000 at eight per cent. due in 1 year, and two for $3400 each at seven per cent. due in 6 and 7 years respectively, and also conveyed to Speer a tract of Texas land.

The above-mentioned three notes were secured by a second deed of trust on the Holt county land, and, in order that the $1000 note should be the same as cash as originally agreed upon, Graham, as additional security for it, gave to Speer a chattel mortgage on certain personalty. The next day, Speer, in order to get cash as he had originally contracted for, assigned the $1000 note to the defendant, Home Bank, without recourse. This made the bank and plaintiff creditors of Graham as at the outset herein above stated, that is to say: The bank held as security for its $1000 note a chattel mortgage and also a lien on the real estate, while plaintiff held as security for his two notes of $2400

each merely a lien on the real estate and that inferior to the bank's lien.

Graham went into possession, farmed the land for a season and made certain improvements. Thereafter he, shortly before any of the three notes given to Speer were due, conveyed the land to one, Simerly, who assumed and agreed to pay the entire indebtedness on it, aggregating $13,800. Simerly, however, never took possession nor made any serious effort to do so.

Nothing was paid on any of the notes against the land. When the $1000 note became due, the $8000 note with a year's interest at 7 per cent, the $1000 note with a year's interest at 8 per cent, the two notes for $2400 each with 6 per cent interest for a year and the taxes for 1913, were all due and unpaid.

Thereupon, in May, 1914, the bank advertised the land for sale under the deed of trust. On the day and at the place of the sale the trustee in publicly reading the notice, discovered an error in giving the page of the record wherein the trust deed was recorded. The effect of this upon the validity of the sale was publicly discussed before the assembled crowd, some holding the sale would be good and others that it would not. Finally the trustee went on with the sale and Speer, the plaintiff, bid the land in at $1200. By this time, however, the trustee was doubtful of the validity of the sale, and, thinking that he should not proceed further under such circumstances, refused to make a deed. Speer was not called upon to pay, nor did he pay or offer to pay, his bid. Graham and Simerly were both present at the sale and knew of the discussion over whether the error in the page would invalidate the sale. No objection or protest was made by anyone at the time over the sale or the failure to complete the foreclosure.

Thereupon, the bank being about to again advertise the land under the deed of trust, Speer, who in the meantime had sought legal advice and had learned that the legal effect of such foreclosure would be to release the chattel mortgage, unavailingly sought to buy

the note of the bank as heretofore stated, and then brought this suit.

It appears from the record, and beyond dispute, that Graham and Simerly are both insolvent. The answer of the bank also admits that the land is not sufficient to pay the liens against it.

There was evidence that, at the time plaintiff was trying to get the bank to sell its note to him, or to foreclose the chattel mortgage first, Graham was insisting that it should do neither but that the trustee's sale to Speer on a bid of $1200 was valid, and that said amount was due thereon from him to the bank whereby the $1000 note was paid and the chattel mortgage discharged. The bank made no protest over the abandonment of the first foreclosure proceedings nor had it ever in any way treated or relied on it as valid. In its answer it averred that Graham was making such claim. Graham, in his cross-bill, set up the validity of the sale as a foreclosure and that by reason of the sale the $1000 note was extinguished and the personalty discharged from the lien of the chattel mortgage; and he prayed that the trustee be required to make a deed to Speer, and that the latter be compelled to pay the amount of his bid, and that the lien of the chattel mortgage be removed from Graham's personalty.

As hereinbefore stated, however, the chancellor found against Graham and, refusing the affirmative relief he sought, dismissed his cross-bill. As the latter did not perfect his right to have any alleged errors as to him reviewed, the feature of affirmative relief sought by him is no longer in the case.

If, however, such attempted foreclosure and the bid made thereunder, be considered as a circumstance bearing upon whether plaintiff is, in equity, entitled to the relief he seeks, there is this to be said. As stated by the Supreme Court, the error in giving the record page—"standing alone—would not have affected the validity of the sale." But that is not all there was. In the midst of the preliminaries, and when the sale was

200 M. A.—18

ready to proceed, a question as to its validity was raised and discussed in the presence of those assembled, among whom perchance were buyers who otherwise might have bid all the land was worth. As it was, Speer, who held the other two notes, bid it in at a much reduced price. This left not only Graham liable on the balance of the notes but also Simerly liable on everything he had assumed. Now, no one treated the foreclosure as complete. All parties abandoned it and treated it as abortive, the trustee in good faith thinking he should not proceed further with that sale under those circumstances, and the purchaser acquiescing therein. It cannot be said the trustee was not strictly within his legal rights, since a trustee is in duty bound to exercise a just and fair discretion in supervising the sale and in protecting the rights of all concerned. [Green Real Estate Co. v. St. Louis Mutual House Building Company No. 3 et al., 196 Mo. 358; Graham v. King, 62 Mo. 22, 24; Stoffel v. Schroeder, 62 Mo. 147, 149.] As the sale was never perfected, nobody acquired any new rights thereunder, nor was anyone's status changed in any way nor was either of the debtors caused to change their situation or relationship toward each other or toward the debts. Why, then, should it be said that, because of this abortive effort at foreclosure, which misled no one and changed no one's status, the plaintiff should be denied any equitable rights to which he might otherwise have been entitled? The fact that at the time of the abortive foreclosure, the plaintiff was unaware of the legal result which would follow from a foreclosure of the deed of trust, and was also ignorant of his equitable rights, ought not to shut him out now, since what was done at the abortive attempt at foreclosure misled no one to his hurt nor caused any change in the situation of either of the debtors or of any of the incumbered property. We are, therefore, of the opinion that the question of plaintiff's equitable right to a marshaling of assets should be considered wholly upon other grounds, with the

abortive attempt to foreclose the deed of trust elimi-
nated as a controlling or determinative circumstance.

It is undoubtedly a well-established rule that
where a creditor has a lien on two funds, or two par-
cels of property, and another creditor has a lien upon
but one of them, the former creditor will, in equity,
be required to seek satisfaction out of that fund or
parcel upon which the other creditor has no lien.
[Paddock-Hawley Iron Co. v. McDonald, 61 Mo. App.
559, 564; 26 Cyc. 927; Dunlap v. Dunseth, 81 Mo. App.
17; 19 Am & Eng. Ency. of Law (2 Ed.), 1256.] So
also is it the rule that "payment of a debt secured
by mortgage . . . may be made by the holder of
a junior lien on the same premises; or generally by
any person having a right or interest in the property
which he is obliged to protect by paying the mortgage,
the rule as to such a person being that, if he is not
primarily responsible for the mortgage debt, he will
be entitled on paying it off to an assignment of the
mortgage, or to be subrogated to the rights of the
mortgagee." [27 Cyc. 1386.] "A creditor, who, in
order to preserve his own security, is compelled to pay
a prior incumbrance, held by another creditor, will be
subrogated to the rights of such creditor, to the extent
necessary for his own protection." [Reyburn v. Mit-
chell, 106 Mo. 365, 380.]

It is contended, however, that the transfer of the
real estate by Graham to Simerly, wherein the latter
assumed and agreed to pay the incumbrances on the
land, made Simerly the principal debtor, and Graham
his surety; and the rule is invoked that a creditor who
has a claim against two debtors, one a principal and
the other a surety, cannot be compelled by another
creditor of the principal debtor to exhaust his remedy
against the surety before proceeding against the princi-
pal. There is no doubt but that this is true. [Trent-
man v. Eldridge, 98 Ind. 525; Garrett v. Burlington
Plow Co., 70 Iowa, 697; Thompson v. Spittle, 102 Mass.
207; Mason v. Hall, 55 Ohio St. 256; Stewart v.
Stewart, 207 Pa. St. 59.] But the principle is not

deemed applicable to this case. It is true that, *as between themselves*, Simerly took Graham's place as the principal debtor and Graham became his surety. But as to plaintiff Speer, Graham did not cease to be any the less his principal debtor by reason of the conveyance to Simerly, unless, indeed, Speer either agreed to accept Simerly as such in Graham's stead or acted in some way to estop himself from treating Graham other than as a surety. There is no evidence of this however. There is evidence that Speer was told of a contemplated transfer of the land from Graham to Simerly and that he offered no objection but informed them the $1000 note would have to be paid when it became due; but there is no evidence that Speer was told Simerly was going to assume the debts or that Speer agreed to accept Simerly as the principal debtor. In 2 Jones on Mortgages (7 Ed.), sec. 741, p. 144, it is said that such "relation of principal and surety between grantor and grantee does not affect the relation between the mortgagor and the mortgagee. The mortgagee cannot be compelled to treat the grantee as the principal debtor, and the grantor as a surety only. The mortgagee may continue to hold the original mortgagor as a principal debtor." And the same author in section 742a says, "the relation of suretyship exists between the grantor and the grantee who assumes the payment of the mortgage, but it does not affect the relations of the mortgagor and mortgagee." [See, also, Conn. Mut. Life Ins. Co. v. Mayer, 8 Mo. App. 18; Huyler v. Atwood, 26 N. J. Eq. 504; 19 R. C. L. 371, sec. 142. See, also, 20 Am. & Eng. Ency. of Law (2 Ed.), 997-8; 27 Cyc. 1352, 1356.]

The mere fact that Graham transferred the land to Simerly who assumed the debt does not compel Speer to regard the latter as his principal debtor and Graham as a surety; nor is the bank required to so regard them; since it nowhere appears that either Speer or the bank dealt with them or so conducted themselves as to consent or agree to that relation. In the case cited by defendant (Nelson v. Brown, 140 Mo.

580), Nelson had so dealt with the parties. He had agreed and consented to the changed relation and had granted an extension of time to the grantee who had assumed the debt. At page 589 the Supreme Court say: "The assumption produces its most important effect, by the operation of equitable principles, upon the relations subsisting between the mortgagor, the grantee, and the mortgagee. *As between the mortgagor and the grantee,* the grantee becomes the principal debtor primarily. liable for the debt, and the mortgagor becomes a surety, with all the consequences flowing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship, and to respect the rights of the surety *in all of his subsequent dealings with them.*" (Italics ours). These remarks must be interpreted in the light of the facts in that case, namely, the consent of the mortgagee to the changed relationship between the grantor and grantee of the mortgaged property, but, in the case at bar, there was no such consent nor were there any subsequent dealings on the part of Speer with either Graham or Simerly. It may be that if a mortgagee *merely has notice* of the transfer and of the assumption of the debt by the grantee, he should, *if possible* without danger of loss to himself, respect the grantor's rights as a surety, since, in such case, the grantor surety would have the same equitable right of marshaling assets as the plaintiff here seeks to invoke. But surely the mortgagee would not, by virtue of *mere notice,* be required to respect the grantor's surety rights, if, by so doing, the mortgagor would suffer loss. [James v. Hubbard, 1 Paige, Ch. 228; Clowes v. Dickenson, 5 Johns, Ch. 235.] And it is admitted in the case at bar that the land is not sufficient to pay the liens against it, hence plaintiff would necessarily suffer loss. If the rule be otherwise, then a mortgagor could, by merely transferring the mortgaged property to another, who, whether solvent or insolvent,

would agree to assume the debt, compel the mortgagee to recognize such relationship. If a mortgagor can, by mere alienation of portions of the mortgaged property and giving notice thereof to the mortgagee, prevent the application of the rule in regard to marshaling assets, then the effectiveness of the rule is destroyed.

But, in this case, the facts are not such as to require plaintiff to suffer loss himself in order to protect any rights Graham may have acquired as against Simerly by getting him to assume his debt. The notes were all negotiable instruments, and, under section 10161, Revised Statutes 1909, Graham is primarily liable thereon, since he was the maker. And as Speer did nothing to bind him to recognize or regard him in any other light than as the primary debtor, he is not required to treat him otherwise unless he can do so safely and without loss to himself. The case at bar is not like the cases hereinabove cited in relation to the failure of the rule in the case of two debtors, one a principal debtor and the other a surety. In all those cases there was, in the original creation of the debt, a surety different and distinct from the principal debtor. Here the principal debtor remains, as to the mortgagee, the principal debtor and the debt remains the same. Neither is the case at bar like one where an endorsee or guarantee of a note seeks to proceed against his endorser, guarantor, or surety, before foreclosing the lien he has on mortgaged property. Of course, in such cases, there are two debtors, one a principal and the other a surety, and the holder of the debt or claim cannot change a relationship existing at the time he acquired it. To permit him to do so would enable him to change the contractual rights of himself and all the other parties. But to enforce this rule in the case at bar would enable a mortgagor of two parcels of property to obtain a release of the lien of one of them by merely transferring the other parcel to an insolvent grantee who agreed to assume the debt.

It would seem that Speer at least has a right to take up the bank's debt and be subrogated to its rights.

[37 Cyc. 460; 29 Cyc. 930; 27 Cyc. 1386; 20 Am. & Eng. Ency. of Law (2 Ed.), 243.] If the bank should elect to satisfy its debt out of the doubly charged property and plaintiff's junior security thereby endangered and destroyed, then equity would permit him, as against the debtor and all claiming under him, to be subrogated to the rights of the bank on the singly charged property to the extent at least of the security thus lost. [16 R. C. L., sec. 15, page 467; Long v. Long, 111 Mo. 12.]

For the foregoing reasons, we are of the opinion that the prayer of plaintiff's petition should be granted wherein he prays that the bank be enjoined from foreclosing the real estate until it has first foreclosed the chattel mortgage unless the bank will accept from plaintiff payment of its note and interest and assign the same, together with all security held by it, to the plaintiff; and that if plaintiff shall not, within ten days after said note and security, duly assigned, has been brought into court, pay the bank the amount of said note with interest then the injunction be dissolved, but if plaintiff pays the amount due on said note and interest to the bank, then the injunction be made perpetual.

The judgment is accordingly reversed and the cause remanded with directions to enter such a decree. The other judges concur.