In re OXFORD DEVELOPMENT, LTD., Debtor.

C.T. DEVELOPMENT CORPORATION, Plaintiff–Appellant,

v.

Gary D. BARNES, Trustee; Canterbury Trails Home Association; Bank of Odessa, Defendants–Appellees.

No. 95–1330.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1995.

Decided Oct. 10, 1995.

James P. Moroney, Kansas City, Missouri, argued, for appellant.

Mark G. Arnold, St. Louis, Missouri, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON and WOLLMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

C.T. Development Corporation appeals from a judgment of the district court[1] affirming an order of the bankruptcy court[2] which overruled an objection by C.T. to a compromise and settlement between the trustee and the debtor's creditors concerning the foreclosure of a deed of trust on seven lots. C.T. argues, as it did in the courts below, that the doctrines of inverse order of alienation and marshaling of assets operate as a bar to the settlement. We affirm the judgment of the district court.

Oxford Development, Ltd., the debtor, owned a number of lots in the Canterbury Trails Addition in eastern Jackson County, Missouri. In 1985, Oxford issued a deed of trust on some of its lots to the Bank of Odessa to secure a note. The Bank's deed of trust permitted nonjudicial foreclosure on any or all of the property subject to the deed

---

1. The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

2. The Honorable Frank W. Koger, Chief Judge, United States Bankruptcy Court for the Western District of Missouri.

of trust upon Oxford's default. The Bank promptly and properly recorded its deed of trust. On April 12, 1989, Oxford issued a warranty deed to C.T. for five of the lots, which were still subject to the Bank's deed of trust. Oxford's deed to C.T. expressly stated that it was subject to any restrictions of record. Also in April 1989, C.T. executed a note to Mark and Jean Brooks for $105,000, and secured the note with a deed of trust in favor of the Brookses on the same five lots.

On March 27, 1990, Oxford's creditors filed an involuntary petition in bankruptcy. The bankruptcy court adjudged Oxford bankrupt on July 12, 1990. C.T. was not listed as a creditor on the schedules Oxford filed on November 2, 1990. Litigation ensued between the trustee, the Bank, and the Canterbury Trails Home Association with respect to the five lots, the conflicting liens on the lots, and the question of foreclosure. All three parties reached a settlement and filed a motion for approval of the settlement. The trustee sent notice of the settlement to Mark Brooks, Chris Sperry, and H.T. & T., Ltd., who were all either owners or officers of C.T. No one filed an objection, and the bankruptcy court approved the settlement on July 8, 1993.

The settlement provided that the Bank would first foreclose on seven lots, which included the five deeded to C.T. in 1989. The Bank started foreclosure and arranged for a trustee sale. The Bank did not go through with the sale because C.T. objected to the sale and threatened to take action against the Bank and the trustee if they carried out the sale. Thereafter, the trustee filed a motion to approve the settlement and overrule C.T.'s objection to the settlement. C.T. filed a motion seeking abstention or a declaration that the settlement and the bankruptcy court's previous order of approval were a nullity.

After discovery and briefing, the bankruptcy court tried the case. The bankruptcy court granted the trustee's motion for approval of the settlement and overruled C.T.'s objections to the settlement. C.T. appealed to the district court, which affirmed the bankruptcy court's order.

C.T. raises only two issues on appeal. C.T. argues that the Missouri common-law doctrine of inverse order of alienation requires the Bank to foreclose first on the lots Oxford owns before the Bank may foreclose on the lots Oxford sold to C.T. In the alternative, C.T. argues that the doctrine of marshaling of assets requires the Bank to foreclose first on Oxford's lots. Apparently, it will be unnecessary to sell all the lots subject to the Bank's deed of trust to satisfy the Bank's claim against Oxford. C.T. would prefer that the bankruptcy court force the Bank to foreclose on Oxford's lots so that C.T. can use its lots to satisfy the Brookses' claim against it. Based on the two doctrines mentioned above, C.T. argues that the bankruptcy court must force the Bank to foreclose first on Oxford's lots.

## I.

We are bound by the bankruptcy court's findings of fact unless they are clearly erroneous. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987). We review de novo the bankruptcy court's and the district court's conclusions of law. *Id.* Most importantly to the issues in this case, we review the bankruptcy court's equitable determinations for abuse of discretion. *See Foy v. Klapmeier*, 992 F.2d 774, 779 (8th Cir.1993).

Missouri law controls the Bank's foreclosure on lots subject to its deed of trust even though it takes place with the approval of a federal bankruptcy court. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

C.T. contends that the Missouri common-law doctrine of inverse order of alienation requires the Bank to foreclose on the lots owned by Oxford before it forecloses on C.T.'s lots. The doctrine of inverse order of alienation is an equitable doctrine that can affect the order in which a mortgagee forecloses on property subject to his mortgage.

Under Missouri law, "[w]here the mortgagor sells portions of the land at different times, that which he retains will, in equity, be held primarily liable for the whole debt; and, if not sufficient, the several parcels will be liable in the inverse order of such sales, beginning with the parcels last sold." *Crosby v. Farmers' Bank*, 107 Mo. 436, 17 S.W. 1004, 1007 (1891). Thus, a court in equity can force a mortgagee to foreclose first on the mortgaged land held by the mortgagor before allowing foreclosure on mortgaged land that the mortgagor has sold to others.

■ The doctrine of inverse order of alienation does not apply in this case. Under Missouri law, when a grantee purchases mortgaged land and takes that land subject to the mortgage as part of his consideration for the purchase, the doctrine of inverse order of alienation no longer applies. *Missouri Home Sav. and Loan Ass'n v. Allen*, 452 S.W.2d 109, 113 (Mo.1970) (quoting 4 John N. Pomeroy, *Pomeroy's Equity Jurisprudence*, §§ 1224–25 (Spencer W. Symons ed., 1941)). The bankruptcy court held that the doctrine of inverse order of alienation did not apply because this case fell under this exception to the doctrine.

■ The bankruptcy court did not err as the record supports the court's conclusion. The record shows that, even though C.T. took title to the lots through a warranty deed from Oxford, the deed expressly stated that it was "[s]ubject to restrictions, reservations, easements and covenants now of record, if any." Under Missouri law, the "subject to" clause qualifies the estate conveyed. *Fairmont Foods Co. v. Skelly Oil Co.*, 616 S.W.2d 548, 553 (Mo.Ct.App.1981). Thus, C.T. took the five lots subject to the Bank's recorded deed of trust.

The record also shows that Oxford sold the five lots at a discount due to the Bank's deed of trust on the lots. Mark Brooks stated in his deposition that he paid the consideration for Oxford's deed to C.T. In essence, Brooks stated that he paid only $6,000 to induce Oxford to deed the five lots to C.T. However, at the bankruptcy court's November 3, 1993 hearing, a licensed real estate broker estimated the value of the five lots to be $150,000. These facts support the bankrupt-cy court's conclusions that C.T. took the lots at a discount due to the Bank's deed of trust and that the doctrine of inverse order of alienation did not apply in this case.

## II.

■ C.T. also argues that the equitable doctrine of marshaling of assets compels the Bank to foreclose first on Oxford's lots before foreclosing on C.T.'s lots. C.T. points out that its lots are subject to a junior lien held by the Brookses, while Oxford's lots are not subject to any junior liens. C.T. asserts that the doctrine of marshaling of assets requires the Bank to foreclose on Oxford's lots to satisfy its claim so that C.T. may use its lots to satisfy the Brookses' junior lien.

■ There are two separate doctrines of marshaling of assets potentially applicable to this case. We must consider the doctrine of marshaling under Missouri law because the Bank is foreclosing its deed of trust under Missouri law. *See Butner*, 440 U.S. at 55, 99 S.Ct. at 918. We must also consider the doctrine of marshaling under federal bank-ruptcy law because the Bank's foreclosure is part of Oxford's bankruptcy proceedings.

■ The Missouri doctrine of marshaling and its federal counterpart are equi-table doctrines. Under Missouri law, "where a creditor has a lien on two funds, or two parcels of property, and another creditor has a lien upon but one of them, the former creditor will, in equity, be required to seek satisfaction out of that fund or parcel upon which the other creditor has no lien." *Tower Grove Bank & Trust Co. v. Duing*, 346 Mo. 896, 144 S.W.2d 69, 72 (1940) (quoting *Speer v. Home Bank of Forest City*, 200 Mo.App. 269, 206 S.W. 405, 407 (Mo.Ct.App.1918)). Marshaling of assets is an equitable doctrine. *Eisenhart v. Schreimann*, 889 S.W.2d 887, 893 (Mo.Ct.App.1994).

■ Under federal law, the doctrine of marshaling of assets is:

not bottomed on the law of contracts or liens. It is founded instead in equity, be-ing designed to promote fair dealing and justice. Its purpose is to prevent the arbi-trary action of a senior lienor from de-

stroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties.

*Meyer v. United States,* 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963). We previously summarized the federal marshaling doctrine as follows:

> If a senior lienor has a lien that extends to and covers two funds or potential funds, and if a junior lienor has recourse to only one of those funds to satisfy the debt due to him, the senior lienor may be required to exhaust the fund available to him exclusively before proceeding against the fund that is also available to the junior lienor.

> Federal courts of bankruptcy are courts of equity and may apply the doctrine of marshaling in proper cases.

*Berman v. Green (In re Jack Green's Fashions for Men–Big and Tall, Inc.),* 597 F.2d 130, 132–33 (8th Cir.1979) (citation omitted). Thus, it is evident that the federal and Missouri doctrines of marshaling are purely equitable and will be enforced only when it is equitable to do so.

The bankruptcy court balanced the equities in this case and determined that it was more equitable for the Bank to foreclose on C.T.'s lots before it forecloses on Oxford's lots. The facts previously recited support the bankruptcy court's determination. Given these circumstances, we hold the bankruptcy court did not abuse its discretion in allowing the Bank to foreclose on C.T.'s lots before it forecloses on Oxford's lots.

We affirm the district court's judgment approving the settlement and allowing the Bank to foreclose on C.T.'s lots.