In re **LIBERTY OUTDOORS, INC.,** Debtor.

Robert J. **BLACKWELL,** Trustee, Plaintiff,

v.

**FIRST NATIONAL BANK OF ST. LOUIS,** Stephen M. Reese, Karen D. Reese and Liberty Outdoors, Inc., Defendants.

Stephen M. **REESE** and Karen D. Reese, Third Party Plaintiffs,

v.

R. Taylor **MATTHEWS,** Jr. and Matthews & Company, Inc., Third Party Defendants.

Bankruptcy No. 95–41821–172. Adv. No. 95–4600–172.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Jan. 14, 1997.

Robert J. Blackwell, Trustee, St. Louis, MO.

Scott A. Greenberg, Davis, Davis, Kasnetz & Greenberg, L.C., Clayton, MO, Lawrence C. Sumner, Sumner & Sumner, P.C., Clayton, MO, for Stephen and Karen Reese.

Gary L. Vincent, Ziercher & Hocker, P.C., Clayton, MO, for First National Bank of St. Louis.

Ira M. Potter, Benson & Guest, St. Louis, MO, for Debtor.

## *MEMORANDUM*

JAMES J. BARTA, Chief Judge.

This matter is before the Court on a Motion for Summary Judgment filed by Stephen M. and Karen D. Reese ("Reeses") in response to the Trustee's Adversary Complaint for Marshaling of Assets filed against the Reeses, First National Bank of St. Louis ("Bank"), and Liberty Outdoors, Inc. ("Debtor"). The Trustee has filed a Cross–Motion for Summary Judgment. In addition, the Reeses have filed a Motion for Leave to File a Third–Party Complaint and Defendants'/Third Party Plaintiffs' Stephen M. Reese and Karen D. Reese's Third Party Complaint naming R. Taylor Matthews and Matthews & Company, Inc. as defendants.

This is a core proceeding pursuant to Section 157(b)(2)(A) of Title 28 of the U.S.Code. The Court has jurisdiction over the parties in this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri. A hearing was held January 16, 1996 and the parties who so desired were granted leave to file

supplemental briefs. These findings and conclusions are based on the record as a whole and are the final determinations of the Bankruptcy Court.

The facts necessary to this determination are not in dispute. Between 1990 and 1992, the Bank loaned $600,000.00 to the Debtor through three separate Promissory Notes. These Notes were secured by liens on the Debtor's inventory and accounts receivable. In addition to the collateral given by the Debtor, the Bank received a continuing guaranty from the Reeses on or about December 6, 1990. The Reeses signed an extension of that guaranty on or about January 31, 1995, acknowledging and concurring in the renewal of the Notes to April 5, 1995 and agreeing that the guaranty retained its full force and effect.

The guaranty was secured by a Deed of Trust, limited to $130,000.00, on the Reeses' personal residence. The Deed of Trust specifically states that it serves as collateral for two of the Notes in the name of the Debtor. The guaranty does not require the Bank to enforce against the Debtor before enforcing against the Reeses' guaranty.

At the time the guaranty was first delivered to the Bank, Stephen Reese was the president and sole shareholder of the Debtor. On July 6, 1994, Stephen Reese transferred all of his interest in the Debtor to Matthews & Company, Inc. ("Matthews") and resigned as an officer of the Debtor. After the transfer of the stock to Matthews, Stephen Reese was employed by the Debtor pursuant to an Employment Agreement, but was neither a stockholder, officer, or director of the Debtor. An involuntary petition was filed against the Debtor on June 21, 1995.

Pursuant to 11 U.S.C. § 544, the Trustee holds a security interest in the Debtor's assets secondary to the Bank. In his complaint for marshaling of the assets, the Trustee acknowledged that the assets of the Debtor would probably be adequate to repay the Bank but would leave little for the unsecured creditors. The Bank has the right to recover against the Reeses' assets pursuant to the guaranty; the Trustee does not. The Trustee urges the Court to require the Bank to foreclose against the Reeses, thus leaving more of the Debtor's assets available for the unsecured creditors.

The Reeses filed a motion for summary judgment stating that the requirements for marshaling have not been established in this case. Specifically, they argue that there are not two funds belonging to the same debtor. The Reeses' personal residence, though collateral for a guaranty of the Debtor's Notes, is not property of the Debtor. Therefore the Reeses contend that marshaling cannot be applied here. The Bank and the Debtor joined the Reeses in opposing the marshaling of assets.

The Bank opposed marshaling on the ground that two of the elements of the doctrine of marshaling are not met in this case. First, it agreed with the Reeses' contention that the two funds do not belong to the Debtor. Second, the Bank asserted that its interests will be prejudiced by the expense and delay of both the foreclosure and the litigation that will likely be generated. The Reeses' property is not under the jurisdiction of the Bankruptcy Court and any litigation between the Reeses and the Bank is likely to be a non-bankruptcy court matter.

The Trustee responded with a cross-motion for summary judgment, citing case law that expands the doctrine of marshaling such that the requirement that the two funds belong to the same debtor has been waived in certain situations.

A motion for summary judgment proceeds under Rule 56 of the Federal rules of Civil Procedure ("Fed.R.Civ.P."), made applicable to bankruptcy by Rule 7056, Federal Rules of Bankruptcy Procedure ("FRBP"). It is appropriate when the "pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56. The moving party bears the burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273 (8th Cir.1988). If the movant satisfies this burden of proof, the

burden shifts to the non-movant to demonstrate material facts in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). To defeat the movant, the non-moving party may not rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine fact issue for trial. Fed. R.Civ.P. Rule 56(e). The court must view the evidence presented in the light most favorable to the non-moving party and the non-moving party must be given the benefit of any inferences that can be reasonably drawn from those facts. *Matsushita Electric Inc. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Alpine Elec. Co. v. Union Bank,* 979 F.2d 133, 135 (8th Cir.1992).

■ The doctrine of marshaling traditionally has the following elements: 1) two lienholders must be creditors of the same debtor; 2) there are two funds belonging to the common debtor; and 3) only one creditor has access to both funds. *In re Oransky,* 75 B.R. 541, 543 (Bankr.E.D.Mo.1987). In such circumstances, equity may require that the first creditor look to the property which is not available to the second creditor, but only if this can be accomplished without prejudice to the first creditor or to third parties. *Id.*

■ Missouri law governs the Bank's foreclosure of the Debtor's inventory and assets, subject to an order of the Bankruptcy Court permitting the Bank relief from the automatic stay of Section 362. *In re Oxford Development, Ltd.,* 67 F.3d 683, 685 (8th Cir.1995). "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

■ Ordinarily, a stockholder of a corporation has no liability to the creditors of the corporation other than the limited liability as to the contribution to capital upon the purchase of the stock. *In re Farmers and Merchants Bank,* 7 B.R. 437, 440 (Bankr. N.D.Fla.1980). Also, ordinarily, when a stockholder guarantees an obligation of the corporation to a particular creditor, that stockholder assumes no liability as to other creditors of the corporation. *Id.*

■ Under the Missouri doctrine of marshaling, unsecured creditors cannot invoke marshaling. Marshaling may be invoked only by the holder of a junior mortgage. *Eisenhart v. Schreimann,* 889 S.W.2d 887, 892 (Mo.App.Ct.1994) reh'g denied 1994, transfer denied 1995 citing *State ex rel. Fields v. Cryts,* 87 Mo.App. 440 (1901). It is the federal Bankruptcy Code that gives the Trustee the status of a judicial lien creditor. 11 U.S.C. § 544(a). It is this status that permits the Trustee to request the application of the doctrine of marshaling in this case. Therefore, the Court will consider the facts of this case under the federal doctrine of marshaling.

■ The federal doctrine of marshaling is an equitable doctrine designed to promote fair dealing and justice. "Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties." *Meyer v. United States,* 375 U.S. 233, 237, 84 S.Ct. 318, 319, 11 L.Ed.2d 293 (1963).

Because marshaling is an equitable, rather than legal, doctrine, bankruptcy courts have used their broad equitable powers to expand the doctrine in an effort to balance the equities in a given situation. *See In re New Woodbridge Barrel & Drum Co., Inc.,* 99 B.R. 221, 223 (Bankr.D.N.J.1988).

■ Thus, in certain limited situations, when fraud, misconduct, or bad faith on the part of a shareholder/guarantor is found, courts have utilized equitable considerations to expand the doctrine of marshaling to treat the collateral of the guaranty of the individual shareholder/guarantor as a fund of the debtor. It is the Trustee's burden to establish sufficient facts to allow the Court to find that it is equitable to treat the two funds as if they were funds of a common debtor. *In re Laeupple,* 87 B.R. 74, 75 (Bankr.W.D.Mo.

1988). When the circumstances compel the imposition of equitable marshaling, the existence of a common debtor may not be immediately discernable from the record. *In re Jack Green's Fashions for Men Big and Tall*, 597 F.2d 130, 132–33 (8th Cir.1979).

For example, in the Bankruptcy Act case of *Jack Green's*, the court ordered marshaling where a corporation and its individual shareholders were bankrupts in separate cases, with a common trustee, and the corporate debtor's assets were so diminished that they could satisfy less than 50% of the secured creditor's debt. In *First National Mercantile Bank and Trust Company v. Hazen*, 96 B.R. 924 (W.D.Mo.1988) shareholder misconduct was found when the shareholder sold off valuable collateral without the secured creditor's consent. In *In re Tampa Chain Co., Inc.*, 53 B.R. 772 (Bankr. S.D.N.Y.1985) shareholder misconduct was also found where a working capital loan guaranteed by the shareholder was spent instead on personal expenses. In *In re Farmers & Merchants Bank v. Gibson*, 7 B.R. 437, 440 (N.D.Fla.1980) the guaranty was deemed to be a contribution to the debtor corporation's capital and therefore was a fund of the debtor where the working capital loans had insufficient corporate collateral and the guarantor and his wife were co-makers as to part of the amount.

Where no fraud, misconduct, bad faith or inequitable conduct is alleged or shown, courts have refused to expand the doctrine. *See Matter of Beacon Distributors, Inc.*, 441 F.2d 547, 548 (1st Cir.1971); *In re Laeupple*, 87 B.R. 74, 75 (Bankr.W.D.Mo.1988); *In re New Woodbridge Barrel & Drum Co., Inc.*, 99 B.R. 221, 223 (Bankr.D.N.J.1988); *In re Oransky*, 75 B.R. 541, 543 (Bankr.E.D.Mo. 1987); *In the Matter of Harrold's Hatchery and Poultry Farms, Inc.*, 17 B.R. 712 (Bankr.M.D.Ga.1982).

 In the matter before the Court, the Trustee has not alleged or shown fraud, misconduct, bad faith or inequitable conduct on the part of the Reeses that would justify waiving the requirement that the two funds must belong to the common Debtor before marshaling will be required. Stephen Reese has not been a shareholder, officer or director of the Debtor since approximately eleven months prior to the commencement of this case. Unlike the situation in *Jack Green's*, the guarantors here are not debtors in a bankruptcy case. The Trustee acknowledges that the Debtor's assets will probably be adequate to pay the Bank's loan in full. There has been no allegation or showing that the guarantor sold off collateral without the Bank's permission. Nor is there an allegation or showing that the guarantors used assets of the Debtor for personal expenses. There is no showing that the Reeses should somehow be held responsible for any losses to the general creditors. The Court finds and concludes that there is no evidence in this record to indicate misconduct on the part of the Reeses. Additionally, it has been shown that the interests of the Bank would be unfairly prejudiced if marshaling is ordered. Under these circumstances, it would be inequitable for this Court to order the Bank to proceed against the guarantors' assets.

Therefore, the Court further finds and concludes that there is no genuine issue as to any material fact, and that as a matter of law, there being no basis upon which to compel marshaling of assets, the Reeses are entitled to judgment on their motion.