**In re Harold Dean BEEMAN, Debtor.**

**Bankruptcy No. 94–20450–C–11.**

United States Bankruptcy Court,
W.D. Missouri.

Sept. 3, 1998.

Judith M. Strong, J. Brian Griffith, James F. Crews, Clarence Hawk, Paul H. Berens, Jerry W. Venters.

### *MEMORANDUM ORDER*

FRANK W. KOGER, Chief Judge.

Two matters are pending before the Court in this case. The first is the Motion for Order to Apply Funds filed by the Chapter 11 debtor, Harold Dean Beeman. The second is the Motion of the United States of America for a Court Order Directing Debtor to Sell His Real Estate and to Marshal the Funds Pursuant to Law and His Chapter 11 Plan of Reorganization filed by the Farm Service Agency, an oversecured creditor of the debtor. For the following reasons, the Court grants the motion filed by Beeman and denies the motion filed by the Farm Service Agency.

### *Facts*

Beeman, a farmer, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 8, 1994. The Farm Service Agency is an oversecured creditor of Beeman holding a first deed of trust on each of three tracts of land owned by Beeman totaling 519 acres. Following a valuation hearing on April 20, 1995, the Court issued

an opinion on April 26, 1995, in which it valued the real estate at $418,000.00. The Farm Service Agency also holds a security interest in machinery, equipment and cattle owned by Beeman, however, it is in a second position behind Commerce Bank, N.A. in this collateral. The Farm Service Agency filed a proof of claim for $328,073.89. In its motion, the Farm Service Agency admits that "[l]and prices seem to continue to increase."

MFA Incorporated holds a second deed of trust securing about $10,500.00 owed by Beeman. MFA Incorporated's deed of trust covers a 92 acre tract of land owned by Beeman, which is subject to the Farm Service Agency's first deed of trust. This is the only land owned by Beeman upon which MFA Incorporated has a lien.

Beeman's Third Amended Chapter 11 Plan of Reorganization (the "Plan"), which was confirmed on March 1, 1996, provides, in relevant part, for the liquidation of all of his real estate over a specified period of time. The plan provides that Beeman shall sell 25% of his real estate within nine months from the date of confirmation, and thereafter sell an additional 25% of his real estate each year until all of the land has been sold.[1] According to the Plan, all of the proceeds from the sale of the real estate, after the payment of income tax and/or capital gains tax on the sale of the specific real estate and the expenses of sale, are to be paid to the Farm Service Agency to retire its real estate indebtedness.

During the summer of 1996, Beeman sold his home and 20.02 acres to his wife. After the sale was concluded, the Farm Service Agency received $60,000.00 on February 3, 1997.

On December 1, 1997, Beeman's attorney sent a copy of a sale agreement to MFA Incorporated's attorney and the attorney for the Farm Service Agency for the sale of the 92 acre tract of land upon which the Farm Service Agency holds the first and MFA Incorporated holds the second deed of trust. At that time the agreed upon price was $77,800.00, but it now appears that the price may have decreased to $75,000.00. The Farm Service Agency is requiring that all of the sale proceeds from the sale of this tract of land be applied to its real estate indebtedness before it will release its deed of trust on the 92 acre tract. MFA Incorporated is requiring that its debt be paid in full, then the remaining proceeds from the sale be paid to the Farm Service Agency before it will release its deed of trust on the land. The Farm Service Agency has suggested to Beeman that he give MFA Incorporated a replacement lien on his remaining land, on mutually agreeable acreage, second to the Farm Service Agency's first lien, but Beeman will not do so.

Stuck in the middle of the two lienholders, on May 23, 1998, Beeman filed a Motion for Order to Apply Funds in which he asks the Court to resolve the disposition of the sale proceeds between the Farm Service Agency and MFA Incorporated. Beeman contends that he has been ready to complete the sale since November of 1997, but because of the stated positions of the two lienholders he has not been able to deliver title to the proposed purchaser. Beeman claims that he has made numerous attempts to get the Farm Service Agency and MFA Incorporated to agree to an escrow of the funds, but neither will agree to this procedure. Beeman requests that interest accruing to the Farm Service Agency and MFA Incorporated during the time of non-closure of the real estate transaction be abated, and that he be awarded his attorney's fees caused by the delay in closing the sale.

A hearing was held on Beeman's motion on July 7, 1998, after which the Court allowed the Farm Service Agency and MFA Incorporated additional time to brief the issue of whether marshaling of assets was appropriate in this case. Instead of filing a brief, on July 23, 1998, the Farm Service Agency filed a Motion of the United States of America for a Court Order Directing Debtor to Sell His Real Estate and to Marshal the Funds Pur-

---

1. In one paragraph of the Plan, Beeman states that he will sell all of his real estate within four years and nine months, but does not indicate when this time period begins to run. In a subse-quent paragraph of the Plan, Beeman states that all of the real estate will be sold within three years and nine months of the date of confirmation of the Plan.

suant to Law and His Chapter 11 Plan of Reorganization. In summary, the Farm Service Agency contends that Beeman has failed to sell his real estate in compliance with the time provisions of the Plan; that as a result Beeman is in default of the Plan provisions; that the Farm Service Agency's and MFA Incorporated's debts are compromised; that Beeman does not have the clean hands necessary with which to request equity and his actions should not be rewarded; that Beeman will be the only one who will receive an advantage if the Court allows the doctrine of marshaling of assets to be applied here; that Beeman is attempting to make MFA Incorporated an unsecured creditor by refusing to give it a replacement lien on additional real estate; and that Beeman should be required to give MFA Incorporated a substitute lien. The Farm Service Agency argues that as a debtor-in-possession, Beeman should be required to "marshal the funds" by first selling land upon which only the Farm Service Agency has a security interest before selling land upon which both the Farm Service Agency and MFA Incorporated have a security interest, therefore, as the senior lienor the Farm Service Agency will be paid first from the sale of all of Beeman's real estate while MFA Incorporated will still retain its security interest in the 92 acre tract of land until all the land is sold.

On August 3, 1998, MFA Incorporated filed a response to the Farm Service Agency's motion in which it reasserts its position that the sale proceeds should be used first to retire the approximately $10,500.00 debt to it with the balance of the proceeds being paid to the Farm Service Agency. MFA Incorporated contends that the Farm Service Agency is an oversecured creditor who will remain adequately collateralized if the sale proceeds are distributed as outlined above, and that this is a perfect case in which to apply the equitable doctrine of marshaling of assets. MFA Incorporated asserts that the focus of the equitable inquiry should be on the equitable treatment as between it and the Farm Service Agency, and that the inquiry should not be tainted by Beeman's defaults under the Plan or whether Beeman does or does not have "unclean hands."

On August 27, 1998, the parties filed a stipulation in which they agreed that oral argument would not assist the Court in this matter and that the case was ready for a decision and order. Accordingly, the Court is ready to rule both motions.

### Discussion

■ Normally, "the priority of liens is determined by the principle 'first in time, first in right.'" *Meyer v. United States*, 375 U.S. 233, 236, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963)(quoting *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954)). However, the United States Supreme Court acknowledged an exception to this general rule when the circumstances of a case compel the application of the doctrine of marshaling of assets. *Meyer*, 375 U.S. at 236, 84 S.Ct. at 321. In *Meyer*, the Supreme Court, quoting *Sowell v. Federal Reserve Bank*, 268 U.S. 449, 456–57, 45 S.Ct. 528, 530, 69 L.Ed. 1041 (1925), opined: "This Court has said that '(t)he equitable doctrine of marshaling (sic) rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.'" *Meyer*, 375 U.S. at 236, 84 S.Ct. at 321. The Court continued:

> In considering the relevance of the doctrine here it is well to remember that marshaling is not bottomed on the law of contracts or liens. It is founded instead in equity, being designed to promote fair dealing and justice. Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties.

*Meyer*, 375 U.S. at 237, 84 S.Ct. at 321.

■ The Eighth Circuit Court of Appeals has recognized and applied the doctrine of marshaling of assets in the cases of *In re Jack Green's Fashions for Men–Big and Tall, Inc.*, 597 F.2d 130 (8th Cir.1979), and *In re Oxford Dev., Ltd.*, 67 F.3d 683 (8th Cir.

1995). Citing *Meyer*, in *Jack Green's Fashions,* the Eighth Circuit stated:

> If a senior lienor has a lien that extends to and covers two funds or potential funds, and if a junior lienor has recourse to only one of the those [sic] funds to satisfy the debt due to him, the senior lienor may be required to exhaust the fund available to him exclusively before proceeding against the fund that is also available to the junior lienor.
>
> Federal courts of bankruptcy are courts of equity and may apply the doctrine of marshaling in proper cases.

*Jack Green's Fashions,* 597 F.2d at 132–33. In *Oxford Dev.,* the Eighth Circuit opined that a bankruptcy court's equitable determinations are discretionary and further explained the doctrine of marshaling of assets as follows:

> There are two separate doctrines of marshaling of assets potentially applicable to this case. We must consider the doctrine of marshaling under Missouri law because the Bank is foreclosing its deed of trust under Missouri law. *See Butner [v. United States],* 440 U.S. [48] at 55, 99 S.Ct. [914] at 918 [(1979)]. We must also consider the doctrine of marshaling under federal bankruptcy law because the Bank's foreclosure is part of Oxford's bankruptcy proceedings.
>
> The Missouri doctrine of marshaling and its federal counterpart are equitable doctrines. Under Missouri law, "where a creditor has a lien on two funds, or two parcels of property, and another creditor has a lien upon but one of them, the former creditor will, in equity, be required to seek satisfaction out of that fund or parcel upon which the other creditor has no lien." *Tower Grove Bank & Trust Co. v. Duing,* 346 Mo. 896, 144 S.W.2d 69, 72 (1940) (quoting *Speer v. Home Bank of Forest City,* 200 Mo.App. 269, 206 S.W. 405, 407 (Mo.Ct.App.1918)). Marshaling of assets is an equitable doctrine. *Eisenhart v. Schreimann,* 889 S.W.2d 887, 893 (Mo.Ct. App.1994).
>
> Under federal law, the doctrine of marshaling of assets is: not bottomed on the law of contracts or liens. It is founded instead in equity, being designed to promote fair dealing and justice. Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties.

*Meyer v. United States,* 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963). We previously summarized the federal marshaling doctrine as follows:

> If a senior lienor has a lien that extends to and covers two funds or potential funds, and if a junior lienor has recourse to only one of those funds to satisfy the debt due to him, the senior lienor may be required to exhaust the fund available to him exclusively before proceeding against the fund that is also available to the junior lienor. Federal courts of bankruptcy are courts of equity and may apply the doctrine of marshaling in proper cases.

*Berman v. Green (In re Jack Green's Fashions for Men–Big and Tall, Inc.),* 597 F.2d 130, 132–33 (8th Cir.1979) (citation omitted). Thus, it is evident that the federal and Missouri doctrines of marshaling are purely equitable and will be enforced only when it is equitable to do so.

*Oxford Dev.,* 67 F.3d at 686–87.

▌ In *In re Jostco, Inc.,* 166 B.R. 399, 402 (Bankr.E.D.Mo.1994), the bankruptcy court succinctly stated that the doctrine of marshaling of assets normally should be applied when:

(1) a debtor possesses two funds; and

(2) two creditors hold claims against the debtor, the senior of whom possesses the right to satisfy its claim from either source of funds and the junior of whom can only satisfy its claims against the creditors' mutual debtor from one source of funds.

*See also In re Liberty Outdoors, Inc.,* 204 B.R. 746, 749 (Bankr.E.D.Mo.1997) ("The doctrine of marshaling traditionally has the following elements: 1) two lienholders must be creditors of the same debtor; 2) there are

two funds belonging to the common debtor; and 3) only one creditor has access to both funds."). "In such circumstances, equity may require that the first creditor look to the property which is not available to the second creditor, but only if this can be accomplished without prejudice to the first creditor or to third parties." *Liberty Outdoors,* 204 B.R. at 749.[2]

■ In this case, either Beeman, in his capacity as a Chapter 11 debtor-in-possession, or MFA Incorporated, as the holder of a junior mortgage, may invoke the doctrine of marshaling of assets. *See Liberty Outdoors,* 204 B.R. at 749.

■ The Court determines that the circumstances in this case provide the perfect example of when the doctrine of marshaling of assets should be applied and that the equities of this case totally favor the marshaling of assets. The Farm Service Agency holds a first deed of trust on all of Beeman's real estate. MFA Incorporated holds a second deed of trust only on the 92 acre tract of land that is the subject of the sale agreement. The Farm Service Agency is admittedly an oversecured creditor and will remain so even if MFA Incorporated's lien is satisfied first out of the sale proceeds. The Farm Service Agency will not be prejudiced if the sale proceeds are first used to satisfy the indebtedness owed by Beeman to MFA Incorporated. However, MFA Incorporated will be prejudiced if all of the sale proceeds are paid over to the Farm Service Agency because MFA Incorporated will be relegated to the position of an unsecured creditor. The Farm Service Agency's request that Beeman provide MFA Incorporated with a replacement lien in other real estate, subordinate of course to the first lien of the Farm Service Agency, is in the Court's mind impracticable and unworkable. There is absolutely no assurance that if such real estate is sold the parties will not find themselves in the same circumstances as herein, and the Court believes that it would be best to resolve the situation now. Additionally, the Court will not interfere with Beeman's attempts to liquidate his real estate by ordering him to sell certain parcels of land before he may sell other parcels, as suggested by the Farm Service Agency. This proposal is likewise impracticable and infeasible.

■ The Farm Service Agency complains that Beeman is in default of the Plan because he has not sold the real estate in accordance with the time schedule set forth in the Plan. However, the Farm Service Agency has made no attempt to enforce compliance with the Plan through this Court, nor sought the appointment of a Chapter 11 Trustee. Indeed, the Farm Service Agency in its motion states that "FSA does have the legal right to foreclose due to Beeman's default in the Plan payments but Beeman's Plan and actions have precluded foreclosure." Accordingly, it is too late for the Farm Service Agency to complain in its present motion. Further, under the circumstances of this case in which the debtor entity owns all of the real estate from which both liens will be satisfied and there is no shareholder or guarantor involved, the Court believes that MFA Incorporated correctly asserts that only the equities as between the Farm Service Agency and MFA Incorporated should be considered when determining whether to marshal the assets and that Beeman's actions or inactions as the debtor-in-possession/liquidator of the real estate are irrelevant. Therefore, whether or not Beeman is in default of the Plan will not be considered by the Court. It appears to the Court that Beeman is trying to sell his real estate, it is just not happening as quickly as contemplated by the Plan.

The Court will order MFA Incorporated and the Farm Service Agency to prepare deeds of release for their respective deeds of trust covering only the 92 acre tract of land that is the subject of the sale agreement, and exchange same for cash payment first to MFA Incorporated in an amount necessary

---

**2.** "[I]n certain limited situations, when fraud, misconduct, or bad faith on the part of a shareholder/guarantor is found, courts have utilized equitable considerations to expand the doctrine of marshaling to treat the collateral of the guaranty of the individual shareholder/guarantor as a fund of the debtor." *Liberty Outdoors,* 204 B.R. at 749. This exception to the general rule of marshaling of assets is not applicable here. All of the real estate to be liquidated under the Plan belongs to Beeman.

to fully satisfy the debt Beeman owes to MFA Incorporated, with the balance of the sale proceeds paid to the Farm Service Agency after payment of the costs of sale and payment of income tax and/or capital gains tax on the sale of the real estate. Beeman has requested that interest accruing to the Farm Service Agency and MFA Incorporated during the time of non-closure of the real estate transaction be abated. The Court will deny this request. Beeman claims that he has stood ready since November of 1997 to close the sale, but did not bring this controversy before the Court until May 23, 1998. Beeman could have brought this matter to the Court's attention well before the end of May 1998, and the Court will not abate the interest that has accrued during the time period that it has taken to resolve this matter. The Court will also deny Beeman's request for attorney's fees caused by the delay in closing the real estate transaction.

### Conclusion

Based on the above discussion, the Motion for Order to Apply Funds filed by Harold Dean Beeman is GRANTED. The Motion of the United States of America for a Court Order Directing Debtor to Sell His Real Estate and to Marshal the Funds Pursuant to Law and His Chapter 11 Plan of Reorganization filed by the Farm Service Agency is DENIED.

The Court ORDERS MFA Incorporated and the Farm Service Agency to prepare deeds of release for their respective deeds of trust covering only the 92 acre tract of land that is the subject of the sale agreement, and exchange same for cash payment first to MFA Incorporated in an amount necessary to fully satisfy the debt Beeman owes to MFA Incorporated, with the balance of the sale proceeds paid to the Farm Service Agency after payment of the costs of sale and payment of income tax and/or capital gains tax on the sale of the real estate.

The Court DENIES Beeman's request that interest accruing to the Farm Service Agency and MFA Incorporated be abated during the time of non-closure of the real estate transaction.

The Court DENIES Beeman's request for attorney's fees caused by the delay in closing the real estate transaction.

Finally, the Court warns all the parties that if there is any unreasonable delay occasioned by any of the parties hereto in carrying out this Court's order, any aggrieved party may seek sanctions.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.